**Paul E. SCOTT et al., Plaintiffs,**

v.

**Bill MOORE et al., Defendants.**

**Civ. A. No. B–75–26–CA.**

United States District Court, E. D. Texas, Beaumont Division.

Nov. 16, 1978.

Robert Q. Keith, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for plaintiffs.

Martin Dies, Jr., Marlin Thompson, Stephenson, Thompson & Dies, Orange, Tex., William N. Wheat, Beaumont, Tex., Joseph

Walter Flowers,
H. H. Silkwood,
Pete Ellis,
Randy Wylie,
John D. Wallace, Jr.
W. H. Carr,
J. L. St. Clair,
Jesse Martin,
J. C. Vaughn,
L. P. Vaught,
A. B. Wheeler,

Pete Bean,
Walter Keneson,

F. Archer, Combs, Archer & Peterson, Houston, Tex., for defendants.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

This is a case in which the Plaintiffs, Paul E. Scott, James T. Matthews, and others, while in the employment of another Plaintiff in this suit, A.A. Cross Construction Co., Inc., were attacked and beaten while constructing a pump station known as the Alligator Bayou Pump Station on the hurricane levee along Taylor's Bayou, near Port Arthur, in Jefferson County, Texas.

The evidence reflects that the attack evolved from a meeting held by the Executive Committee of the Sabine Area Building and Construction Trades Council on January 15, 1975, wherein a "citizen protest" was discussed and a time and place were chosen for such protest. The purpose of this demonstration was to voice concern over Cross Construction Company, Inc.'s bringing "outside" nonunion workers into a "union area." In addition, the evidence shows that the Plaintiffs were informed by several Defendants that if the Plaintiff, Cross Construction Co., Inc., continued to hire nonunion personnel for the work to be performed on the Alligator Bayou Station, there would be "serious trouble."

Unions represented and individuals present at the January 15, 1975 meeting included:

Laborers Local # 870
Cement Masons Local # 884
Pipefitters Local # 195
Carpenters Local # 753
Carpenters Local # 610
Carpenters Local # 753
Painters Local # 243
Boilermakers Local # 277
Boilermakers Local # 587
Ironworkers Local # 125
Carpenters District Council
  of Sabine Area
Sheet Metal Workers Local # 198
I.B.E.W. Local # 479

Thereafter, on January 17, 1975, a large group of individuals, including union members present at the January 15, 1975 meeting, amassed at the entrance to the Alligator Bayou Construction site. From this group, several truckloads of men emerged,

drove onto the construction site, assaulted and beat the Plaintiffs, burned and destroyed the tools and equipment of Plaintiff, Cross Construction Co., Inc., and threatened to continue violent actions if the nonunion workers did not leave the area or concede to union policies and principles.

A suit was then filed pursuant to 42 U.S.C. 1985(3) with jurisdiction predicated upon 28 U.S.C. 1343 and 1331. Section 1985(3) states, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . (and) in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

To come within the purview of 42 U.S.C. 1985(3), a complaint is required to allege four matters:

(1) the defendants must conspire

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

(3) the defendants must act in furtherance of the object of the conspiracy, whereby

(4) one was (a) injured in his person or property or (b) deprived of having and exercising any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

In addition, the *Griffin* Court interpreted the language requiring intent to deprive of equal protection or equal privileges and immunities, to mean that such intent must have at its foundation some racial or perhaps otherwise class-based invidiously discriminatory animus. However, the Supreme Court refrained from deciding whether a conspiracy motivated by such invidiously discriminatory intent, other than racial bias, would be actionable under Section 1985(3).

The *Griffin* decision demonstrated the Supreme Court's serious concern over the creation of a general federal tort law should Section 1985(3) be literally interpreted; and, as a result the Court stated,

> The Constitutional shoals that would lie in the path of interpreting section 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment (incorporated into the section) . . .

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin*, supra at 102, 91 S.Ct. at 1798.

The Seventh Circuit, in *Dombrowski v. Dowling*, 459 F.2d 190 at 195, in addressing the breadth of section 1985(3), found,

> The breadth of the statute's coverage is yet to be determined, but three categories of protected rights have been plainly identified. *Griffin* gives express recognition to a black citizen's Thirteenth Amendment rights and to his federal right to travel interstate; the title of the statute expressly identifies the third category, namely, rights protected by the Fourteenth Amendment.

The problem now before us does not involve an allegation of racial discrimination,

nor an interference with the right to travel interstate. Rather, this Court is required to determine whether the Plaintiffs have shown a "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, supra. The central inquiry here is whether discrimination against employees of a non-union entity is the kind of invidiously discriminatory motivation the Court envisioned in *Griffin*.

■ It is the opinion of this Court that the Plaintiffs in the instant case have set out and proven a Section 1985(3) cause of action for the reasons hereafter stated.

■ In regard to the first requirement delineated by the *Griffin* decision necessary to have a Section 1985(3) cause of action, this Court finds that the Plaintiffs have established, and the facts show the existence of, a conspiracy by the Defendants. Elements of a conspiracy, agreement and intent, may be and often must be shown by circumstantial evidence. *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336 (9th Cir. 1970). It is well established that one can be a party to a conspiracy even though he does not know of the existence or identity of all his co-conspirators, and even though he does not participate in all of their acts. Once the conspiracy exists, co-conspirators of whom a party to the conspiracy is unaware can bind him by their actions. *United States v. Friedman*, 445 F.2d 1076 (9th Cir. 1971). It is not essential that each conspirator participate in all the activities of the conspirators in furtherance of the conspiracy or have knowledge of such activities. It is sufficient if the conspiracy is established and that the convicted persons knowingly contributed their efforts in furtherance of it. *McManaman v. United States*, 327 F.2d 21 (10th Cir. 1964). One who knowingly joins a conspiracy takes it as he finds it, with or without knowledge of what has gone on before. *Myzel v. Fields*, 386 F.2d 718 (8th Cir. 1967). All co-conspirators are liable for acts done during the continuance of the conspiracy and in furtherance of some purpose of the conspiracy even though the acts may have occurred without the knowledge of one of the defendants. *El Ranco, Inc. v. First National Bank of Nevada*, 406 F.2d 1205 (9th Cir. 1968).

The violence perpetrated upon the Plaintiffs meets the second requisite set out in *Griffin*, i. e. a conspiracy "for the purposes of depriving another of equal protection or equal privileges and immunities." The Fifth Circuit, in *McLellan v. Mississippi Power and Light Co.*, 545 F.2d 919 (1977), held that two elements must be present in order to satisfy *Griffin's* second requirement, namely, (1) the private deprivation of the enjoyment of the laws, and (2) a class-based, discriminatory motivation. In determining what a private deprivation of the enjoyment of legal rights entails, the Fifth Circuit found that the inquiry must initially concentrate on the legality of the defendants' activity apart from section 1985(3).

If the object of the defendants' conspiracy did not include a violation of some law (independent of section 1985(3) itself) which protects the plaintiff, the conspiracy could not have deprived the plaintiff of the 'protection of the laws.' Put more simply, there can only be a deprivation of the rights of a plaintiff when the action of the defendants is *otherwise* illegal. *McLellan*, supra at 924–925.

We find that the conspiracy in the instant case clearly encompassed violations of both the civil and criminal laws of Texas. In addition, we find that the defendants engaged in the unlawful conduct they conspired to commit. The January 15, 1975 meeting and the actions leading to the attack upon the Alligator Bayou Station, the assault of the nonunion construction workers, and the destruction of the tools and equipment of Cross Construction Co., Inc. constituted a conspiracy. Clearly, the Defendants in this case have conspired to act contrary to law and therefore, the second element of section 1985(3) has been met. In this, there can be no denial.

As noted earlier, the Supreme Court's *Griffin* decision declined to address the question of "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable"

under section 1985(3). Nevertheless, some lower courts have held that various private conspiracies are actionable under the statute. E. g. *Richardson v. Miller*, 446 F.2d 1247 (3rd Cir. 1971); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc). The Fifth Circuit, in *McLellan*, declined to decide whether Congress intended that *only* racial bias would activate section 1985(3), although they did note that the Supreme Court's evident concern in *Griffin* over the broad literal sweep of the statute would dictate the exercise of restraint when a court is confronted with class-based discrimination grounded in a non-racial animus.

The requirement that there be some kind of class-based discriminatory animus behind the conspirator's actions presents the most difficult obstacle to a Plaintiff bringing a section 1985(3) action. To meet this requirement, the Plaintiffs contend that a conspiracy motivated by an invidiously discriminatory intent against non-union individuals and employers of these individuals is actionable under section 1985(3). To find for the plaintiffs, this Court must reach two separate conclusions. The Court must first decide whether the statute affords protection to classes drawn along lines other than race; and second, given an affirmative answer to the first, whether the Plaintiff's class—non-union laborers and the employer of those laborers—is a class within the ambit of Section 1985(3)'s protection.

This Court is persuaded that, while racial discrimination and the activities of the Ku Klux Klan were foremost on Congress' mind when it passed the Ku Klux Klan Act, the legislative branch sought to protect any individual of a discernable and definite class from discrimination and violence directed toward him because of his membership in such class. From the Congressional Record, one can readily assume that section 1985(3) was intended to extend beyond racially based conspiracies and beyond the problems perceived to be pressing in 1871. Senator Edmunds, one of the proponents of a Bill which is now known as the Civil Rights Act of 1871 and which Section 1985(3) is based upon, remarked at a hearing on the issue,

We do not undertake in this Bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indictment in the State courts against men for burning down his barn; but if in a case like this, it should appear that this conspiracy was formed against this man because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, . . . then this section could reach it.

42d Cong., 1st Sess. 567 (1871), reprinted in A. Avins, *The Reconstruction Amendments' Debates* 547 (1967).

■ Sections 1981 and 1982 make specific reference to race and therefore have not been extended to non-racial discrimination, while section 1985(3) makes no such reference. In addition, the Sixth Circuit, in *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973), ruled that a supporter of a candidate for sheriff could maintain a section 1985(3) action against individuals who had interferred with the Plaintiff's exercise of Federal rights. Thus, this Court concludes that Congress did not intend to limit the protection of section 1985(3) to racial discrimination only. On the other hand, this Court would warn that the statute is not to be a panacea for discrimination. Rather, section 1985(3) is plainly addressed to discrimination which has at its foundation a "racial or perhaps otherwise class based, invidiously discriminatory animus" and that discriminatory animus must be directed towards a definite and discernable class.

It is, therefore, incumbent upon the Plaintiffs in the instant case to next establish that they are members of a definite class which is protected by this section.

As noted above, the animus requisite for an action under section 1985(3) must be directed against a group or class having common characteristics of an inherent nature, not a congeries of persons who become a "class" by virtue of the denial to them of

some advantage or their involvement in a single common kind of action. The statute is not designed to embrace *any* conspiracy that is aimed at two or more people with a single common trait.

■ Section 1985(3), it seems to us, lends itself only to those situations where the injury is class motivated and the class animus alleged must be consistent with the deprivation of rights alleged. The creation of a class of victims by tortious conduct does not, of itself, bring a claim within section 1985(3). To succeed, a Plaintiff must show a conspiracy entered into with intent to deny the class to which he belongs equal protection of the law, or an injury for lawfully expressing the right of any person to equal protection of the law.

■ This Court finds the Plaintiffs have met this requisite, in that they are members of a discernable class, to wit: non-union laborers and employers of non-union laborers. Likewise, this Court believes that men and women have the right to associate or not to associate with any group or class of individuals, and concomitantly, to be free of violent acts against their bodies and property because of such association or non-association.

■ Moreover, it is obvious, in this Court's mind, that the acts of violence upon these individuals in this case are manifestations of the ill-will and hatred these union members harbor toward non-union individuals, as well as, an attempt by the unions to intimidate and coerce these non-union people from working or being employed within a "union area". This Court is convinced that the violence evidenced in this case constitutes discrimination and that it makes no

difference whether the lines are drawn between Black and White, Protestant and Catholic, or union and non-union. In each case, the need for protection is of equal persuasion.

Therefore, it is the opinion of this Court that the Plaintiffs have clearly established a section 1985(3) claim and are entitled to damages.

■ The damages in this case can be divided into two types—immediate and consequential damages. Immediate damages being those to property and person which arise from a single occurrence, such as the destruction of equipment which can be repaired or replaced. The consequential damages are those suffered by the Plaintiff contractor, his construction contract and his contractual relations.

This Court finds immediate damages as follows: To Plaintiffs Paul E. Scott and James T. Matthews, $5,000.00 each for injuries sustained during the attack on January 17, 1975. To Cross Construction Company, $10,314.00 for damage to and loss of construction equipment. This award does not include those monies paid by Cross's insurance company for the custom-made office shack, five tool shacks and numerous small tools which were destroyed by the Defendants.

The consequential damages embrace those additional costs for insurance coverage and guard service forced upon Cross Construction Company due to the January 17 attack. We find that the increased insurance costs directly caused by this attack totals $27,089.44. This figure, proven at the trial, can be broken down as follows:

Increased Insurance Cost to Cross Construction

| | |
|---|---|
| Worker's Compensation Experience Modification | $14,030.00 |
| Worker's Compensation Dividend | 9,992.00 |
| Contractors Equipment Premium Increase | 2,067.44 |
| Contractors Equipment Deductible | 1,000.00 |
| | 27,089.44 |

We also find that Plaintiff Cross Construction Company incurred $49,982.00 in additional expenses for a security service.

Not only did the property insurers and worker's compensation insurers refuse to write further coverage absent full-time se-

curity guard protection, but Cross's employees and his suppliers refused to come upon the jobsite absent protection.

In addition, this Court directs that the Defendants pay the Plaintiff's attorneys fees in the amount of $25,000.00.

The Court finds that the Defendants in this case are jointly and severally liable for the above damages.

All costs shall be paid by the Defendants. Counsel for Plaintiffs shall submit an appropriate judgment consistent with the verdict of the Court, to be entered within thirty (30) days from this date.