**Versie KIMBLE, Plaintiff-Appellant,**

v.

**D. J. McDUFFY, INC. and Industrial Foundation of the South, and all of its subscribers, Defendants-Appellees.**

No. 78–1474.

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1980.

Lawrence D. Wiedemann, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, Harry S. Redmon, Jr., Rutledge C. Clement, Jr., Margaret Ann Brown, New Orleans,

La., George J. Petrovich, Jr., Fort Worth, Tex., for defendants-appellees.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

Tales of the violence of white sheeted Southerners prompted Congress to pass the Ku Klux Klan Act of 1871. Today this Court is asked to decide whether one of the offspring of that Act, 42 U.S.C. § 1985(2),[1] provides relief for individuals who allege they are unable to obtain employment in the oil drilling industry because they filed personal injury claims against companies in that industry. The district court, 445 F.Supp. 269, held as a matter of law that the statute does not cover this alleged blacklisting and granted summary judgment for defendants. We affirm in part and reverse in part.

I. *The Facts*

The Industrial Foundation of the South (the Foundation) is a non-profit corporation that assists its member companies, all affiliated with the oil industry, in making personnel decisions. Specifically, the Foundation checks court records in Louisiana, Texas, Mississippi, Alabama, Oklahoma, New Mexico, and Missouri to discover all claims filed against companies in the oil industry for injuries resulting from employment.[2] The Foundation then compiles a list of the individuals who have filed suit in federal or state courts, as well as those who have sought workers' compensation pursuant to federal or state law.[3] Whenever someone applies for employment with one of the approximately 300 subscribers to the Foundation's services, the person handling the job application notifies the Foundation and provides the Foundation with the prospective employee's name and social security number.[4] The Foundation searches through its one-half million records and supplies the requesting company with any pertinent information that it has on the applicant. Using this information as a guideline, the employer then makes an appropriate employment decision.

One of the individuals whose record may be found in the Foundation's files is the named plaintiff in this cause of action, Versie Kimble. In 1969 Kimble injured his right shoulder while working for Noble Drilling Company. He filed suit in federal court and, after a jury trial, recovered $35,000. In December 1972, Kimble began working for D. J. McDuffy, Inc. (McDuffy), a now-defunct oil well service company. At the time McDuffy hired Kimble, the company was not a member of the Industrial Foundation of the South. In March 1973 McDuffy joined the Foundation. Shortly thereafter, in early April, McDuffy fired Versie Kimble. McDuffy contended that it terminated Kimble because he was about to seek political office. Kimble claims he was fired because of his prior suit against Noble Drilling Company.

On May 13, 1973, Versie Kimble filed this class action on behalf of all individuals who had been denied employment by Foundation members because they had filed workers' compensation or personal injury claims against companies affiliated with the oil

---

1. 42 U.S.C. § 1985(2) is known as the Federal Conspiracy to Obstruct Justice Act.

2. The Foundation hires various individuals to examine the court records. Some of those who examine the records are salaried employees. The majority are district clerks and assistants to district clerks, who are paid a sum of money for each case they report to the Foundation. Deposition of H. J. Robinson at p. 84–86. The propriety of this conduct by federal employees is not before this Court.

3. The Foundation's records contain more than just a list of the names of individuals who have filed personal injury actions against oil companies. The records include the person's name; the nature of the injury; the amount of money sought; the name of the employee; the name of the insurance company; and the attorneys for both the plaintiff and defendant.

4. The general manager of the Foundation indicated that the Foundation received approximately 92,000 requests per year in 1973. Deposition of H. J. Robinson at p. 82.

drilling industry. The defendants included D. J. McDuffy, Inc., the Industrial Foundation of the South, and all members of the Foundation. The complaint, based entirely on 42 U.S.C. § 1985(2),[5] sought damages for the class and a permanent injunction enjoining defendants from continuing their allegedly unlawful practices.[6] The district court denied class action status with respect to the damage claim, but certified the class with respect to the claim for injunctive relief.

In January 1978 the district court considered the defendants' motion for summary judgment. The district court gave plaintiffs the benefit of all assumptions and drew all inferences in favor of the plain-

tiffs. After thoroughly examining Section 1985(2), the district court concluded that the statute does not cover the actions that plaintiffs complained of, and held that the defendants were entitled to judgment as a matter of law. *Kimble v. D. J. McDuffy, Inc.*, 445 F.Supp. 269 (E.D.La.1978). Plaintiff then instituted this appeal.

## II. *Statutory History*

The starting point for delineating the coverage provided by section 1985(2) is the section's statutory roots. *See Brawer v. Horowitz*, 535 F.2d 830 (3d Cir. 1976). The parent of Section 1985 is Section 2 of the Ku Klux Klan Act.[7] Act of April 20, 1871, Ch. 22, § 2, 17 stat. 13. In 1874, pursuant to

---

**5.** 42 U.S.C. § 1985(2) provides:

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or *to injure such party or witness in his person or property on account of his having so attended or testified*, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**6.** As the district court noted, plaintiffs have not invoked admiralty jurisdiction, the antitrust laws, nor diversity jurisdiction. *Kimble v. D. J. McDuffy, Inc.*, 445 F.Supp. 269, 272 n. 3 (E.D. La.1978).

**7.** Section 2 of the Ku Klux Klan Act provided: Sec. 2. *That if two or more persons within any State or Territory of the United States shall conspire together* to overthrow, or to put down, or to destroy by force the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property

of the United States contrary to the authority thereof, or by force, intimidation, or threat to prevent any person from accepting or holding any office or trust or place of confidence under the United States, or from discharging the duties thereof, or by force, intimidation, or threat to induce any officer of the United States to leave any State, district, or place where his duties as such officer might lawfully be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or to injure his person while engaged in the lawful discharge of the duties of his office, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duty, or *by force, intimidation, or threat to deter any party or witness in any court of the United States from attending such court, or from testifying in any matter pending in such court fully, freely, and truthfully, or to injure any such party or witness in his person or property on account of his having so attended or testified, or by force, intimidation, or threat to influence the verdict, presentment, or indictment, of any juror or grand juror in any court of the United States, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or an account of his being or having been such juror*, or shall conspire together, or go in disguise upon the public highway or upon the premises of another for the purpose, either directly or indirectly, of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State from giving or securing to all persons within such State the equal protection of the

Congressional authorization, Secretary of State Hamilton Fish supervised the revision and publication of all the statutes of the United States. During the course of that revision, minor grammatical changes were made and Section 2 of the Ku Klux Klan Act was reformulated into three subsections. *Brawer* 535 F.2d at 838, 839. The reformulated version of Section 2 of the Ku Klux Klan Act made its way into the revised statutes as Section 1980. The current language of Section 1985, including Section 1985(2), is taken verbatim from Revised Statutes § 1980, Second.

Section 1985(2) was once part of a unitary statutory scheme designed to protect individuals from a wide range of conspiracies. Thus, in seeking to interpret the language of Section 1985(2), courts must be guided by prior interpretations of similar language found in Section 2 of the Ku Klux Klan Act, specifically those provisions that today constitute 1985(1) and (3).

### III. *The Section 1985(2) Cause of Action*

#### A. Analytical Framework

The issue before this Court is whether plaintiffs produced sufficient evidence to survive defendants' motion for summary judgment. A careful analysis of the various provisions of Section 1985(2) and an application of the facts to those provisions is required in order to resolve this question. In conducting this examination, we must approach the "perfidious syntax" of Section 1985(2) with some care. *Brawer*, 535 F.2d at 837. The statute contains several different provisions, no two of which are directed at the same type of conspiracy. As the district court noted, when one omits the clauses in Section 1985(2) that are applicable to juries and jurors (and inapplicable in the case at bar), subsection 2 contains four clauses that create four distinct causes of action:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

---

laws, or *shall conspire together for the purpose of in any manner, impeding, hindering, obstructing, or defeating the due course of justice in any State or Territory, with intent to deny to any citizen of the United States the due and equal protection of the laws, or to injure any person in his person or his property for lawfully enforcing the right of any person or class of persons to the equal protection of the laws,* or by force, intimidation, or threat to prevent any citizen of the United States lawfully entitled to vote from giving his support or advocacy in a lawful manner towards or in favor of the election of any lawfully qualified person as an elector of President or Vice-President of the United States, or as a member of the Congress of the United States, or to injure any such citizen in his person or property on account of such support or advocacy each and every person so offending shall be deemed guilty of a high crime, and, upon conviction thereof in any district or circuit court of the United States or district or supreme court of any Territory of the United States having jurisdiction of similar offences, shall be punished by a fine not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, as the court may determine, for a period of not less than six months nor more than six years, as the court may determine, or by both such fine and imprisonment as the court shall determine. And if any one or more persons engaged in any such conspiracy shall do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby any person shall be injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the persons so injured or deprived of such rights and privileges may have and maintain an action for the recovery of damages occasioned by such injury or deprivation of rights and privileges against any one or more of the persons engaged in such conspiracy, such action to be prosecuted in the proper district or circuit court of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts under the provisions of the act of April ninth, eighteen hundred and sixty-six, entitled "An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication."

Those parts of Section 2 that today constitute Section 1985(2) are emphasized.

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.

445 F.Supp. at 274. In determining whether plaintiffs' claim should have survived a motion for summary judgment, this Court must examine each of these four clauses individually.

B. Clause C

■ Clause C of Section 1985(2) is aimed at conspiracies designed to obstruct "the due course of justice in any State or Territory." The conspiracy must be entered into with the intent to deny "equal protection of the laws . . . ." The district court held that plaintiffs failed to allege or show a conspiracy entered into with the intent to deny them equal protection of the law. We agree.

Exactly what evidence is required to establish that defendants entered into a conspiracy with the intent of denying plaintiffs equal protection of the law is not readily apparent. The starting point for this inquiry must be the Supreme Court's interpretation of similar language from Section 1985(3) in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Although the Supreme Court in *Griffin* was focusing on the language of Section 1985(3), this Court has held that, in light of its statutory roots,[8] clause C is to be interpreted in accordance with *Griffin*. *Slavin v. Curry*, 574 F.2d 1256, 1262, *modified* 583 F.2d 779 (5th Cir. 1978).

*Griffin* involved an assault on blacks traveling a Mississippi highway by white private citizens. The attack was racially motivated—defendants acted on the mistaken belief that the plaintiffs were civil rights workers. The issue in *Griffin* was

whether Section 1985(3) created a cause of action for damages against individuals acting in a purely private capacity.

The Court held that Section 1985(3) was designed to protect individuals from actions by private persons. The Court recognized, however, that Section 1985(3) was not "intended to apply to all tortious, conspiratorial interferences [by private parties] with the rights of others." *Id.* 403 U.S. at 101, 102, 91 S.Ct. at 1798. "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, animus behind the conspiratorial actions." *Id.* at 102, 91 S.Ct. at 1798 (footnote omitted). Thus, since defendants in the case at bar are private parties, in determining whether plaintiffs have satisfied the requisites of clause C this Court must determine whether plaintiffs have established that defendants were motivated by the appropriate class-based, discriminatory animus.

We note from the start that not all classes of individuals fall within the protective cloak of clause C. *See, e. g., McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (persons who have voluntarily filed a bankruptcy petition are not a protected class); *Bricker v. Crane*, 468 F.2d 1228 (1st Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973) (doctors who have testified against their brethren in malpractice cases are not a protected class). The class that plaintiffs allege is the target of defendants' conspiracy is one that includes workers employed in the oil exploration industry who have pursued some type of personal injury claim. While personal injury claimants are undoubtedly a class for some purposes, the question in the case at bar is whether Congress intended to proscribe a conspiracy to obstruct the due course of justice *aimed at personal injury claimants*. A careful review of Congressional intent and the subsequent jurisprudence establishes that Section 1985(2), clause C was not designed to protect this class of plaintiffs.

---

**8.** *See* Section II, *supra.*

There are two distinct genres of classes protected by clause C. The first category is defined by some courts as one where the class is characterized by some inherited or immutable characteristic. Perhaps the better definition is that recently endorsed by the Ninth Circuit in *DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608 F.2d 327 (9th Cir. 1979). The Ninth Circuit held that in determining whether a group of individuals satisfies the class requirement of 1985(3), federal courts have remained faithful to the basis principle underlying the adoption of Section 2 of the Ku Klux Klan Act: "The governmental determination that some groups require and warrant special federal assistance in protecting their civil rights." *Id.* at 333. *Cf. Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1963) (Although the civil rights statutes were enacted in response to post-war conditions in the South, they are cast in general language and provide for flexibility).

The Supreme Court focused on the most obvious of this type of protected class in *Griffin*, when the Court held that conspirators who acted with a racially discriminatory animus could be found to be in violation of Section 1985(3).[9] Lower federal courts have extended this first category beyond race to encompass those who are victims of a conspiracy due to their sex, *Life Insurance Company of North America v. Reichardt*, 591 F.2d 499 (9th Cir. 1979); *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063 (D.Maine 1977); religion, *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); or national origin, *Id.*[10]

Plaintiffs are unable to establish that Congress or the judiciary has displayed a special solicitude towards their class because of its need for assistance in enforcing its civil rights. While this Court recognizes that the protective scope of the Act is not static, a class composed of personal injury claimants does not fall within this first category of classes protected by Section 1985(2), clause C.

There is a second category of classes encompassed by Sections 1985(2) and (3). This category includes individuals who are victims of a conspiracy because of their political beliefs or associations.

That Congress intended to protect individuals who are conspired against because of their political beliefs or associations is beyond doubt. Although the Ku Klux Klan is today thought of as a racist organization, in 1871 it was primarily a political organization. The Republicans, who controlled the 42d Congress, found Klan violence especially troublesome because they were convinced that it was politically motivated. Comment, *A Construction of Section 1985(c) in Light of Its Original Purpose*, 46 Univ.Chi. L.Rev. 402, 408 (1979). The majority report of the Senate Select Committee to Investigate Alleged Outrages in the Southern States reflected this concern: "[I]t is clearly established . . . that the Ku Klux Organization does exist, has a political purpose, is composed of members of the democratic or conservative party, [and] has sought to carry out its purpose by murders, whippings, intimidations, and violence." H.R.Rep.No. 1, 42d Cong. 1st Sess. XXX–XXXI. The need to protect individuals being harassed because of their political associations rang throughout the Congressional debate. Senator George Edmunds of Vermont, who reported the bill out of committee, stated that:

> We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indictment in the State courts against men for burning down his barn; but, *if in a case like this, it should appear that this con-*

---

**9.** That Congress intended to protect those discriminated against due to race is evidenced by the title of the Act itself: "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for Other Purposes." 17 Stat. 13 (1871).

**10.** Classes that have been and will be recognized as warranting special assistance in protecting their civil rights are not limited to the "suspect groups" of the fourteenth amendment.

*spiracy was formed against this man because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter,* (which is a pretty painful instance that I have in mind in the State of Florida within a few days where a man lost his life for that reason,) *then this section could reach it.*

42d Cong., 1st Sess. 567 (1871), reprinted in A. Avins, The Reconstruction Amendments Debates 547 (1967) (emphasis added). Representative Ellis Roberts repeated this same concern when discussing, in the House, the need for legislation.

But one rule never fails: the victims whose property is destroyed, whose persons are mutilated, whose lives are sacrificed, are always Republicans. They may be black or white; they include those who wore the blue and those who wore the gray; new-comers and life-long residents, but only Republicans. *Stain the door lintels with the mark of opposition to reconstruction and of hostility to the national Administration, and the destroying angel passes by. Omit that sign, and the torch may kindle the roof that covers women and children; the scourge may fall upon shoulders that stoop with weakness and with age; the bullet may pierce the breast without warning. Such uniformity of result can come only from design. Republicans only are beaten and mutilated and murdered, because the blows are aimed at Republicans only.*

Cong.Globe, 42d Cong., 1st Sess., 412–413 (1871) (emphasis added).

Federal courts have recognized that those who are discriminated against because of political views or associations fall with the protective scope of Section 1985(2) and (3). Courts have found a class-based animus sufficient to support causes of action where the conspiracy is directed toward supporters of a particular political candidate, *Cameron*

*v. Brock*, 473 F.2d 608 (6th Cir. 1973) and *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976); voters who were deceived about the actual effect of their vote, *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), *cert. denied* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974); individuals critical of the President and his policies, *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); members of a group advocating an unpopular position, *Puentes v. Sullivan*, 425 F.Supp. 249 (W.D. Tex.1977); laborers who are not members of a union, *Scott v. Moore*, 461 F.Supp. 224 (E.D.Tex.1978); members of the teaching profession who talk or associate with the CIA, *Selzer v. Berkowitz*, 459 F.Supp. 347 (E.D.N.Y.1978); and students who exercise their first amendment rights by joining certain organizations, *Brown v. Villanova University*, 378 F.Supp. 342 (E.D.Pa.1974).

Unfortunately for plaintiffs in the case at bar, this second category is of little assistance. Plaintiffs have provided no summary judgment evidence to establish that they are victims of a conspiracy because of their political views or associations. Rather, even assuming a conspiracy exists, the record indicates that the conspiracy is directed at plaintiffs because they filed personal injury claims. This is simply not the type class that is protected by the statute.

In summary, plaintiffs have not established the class-based, discriminatory animus that is required for a cause of action under Section 1985(2), clause C. The district court's grant of summary judgment on this portion of subsection (2) is affirmed.[11]

### C. Clause D

■ Clause D is aimed at conspiracies against individuals because the individuals lawfully enforce the right of any person or

---

**11.** Because plaintiffs have not established a class-based, invidiously discriminatory animus, this Court need not determine the applicability of the Section 1985(3) requirement of independent illegality set forth in this Court's opinion in *McLellan v. Mississippi Power & Light Co.*,

545 F.2d 919, 925–7 (5th Cir. 1977) (en banc), to Section 1985(2), clause C; or the constitutionality of a statute that creates a federal cause of action against private parties for obstructing justice in a state or territory. 445 F.Supp. at 275, n. 5.

class of persons to equal protection. The courts that have construed this clause have universally noted that it is directed toward "equal protection of the laws," the key phrase in the Supreme Court's *Griffin* analysis. *See, e. g., Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975); *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976). The courts have required that plaintiffs establish a class-based invidiously discriminatory animus in order to prevail under this clause of Section 1985(2). As this Court noted above, plaintiffs have failed to establish that there was an appropriate class-based, discriminatory animus in the case at bar. Accordingly, the district court's grant of summary judgment for defendants on this clause is also affirmed.

### D. Clause A

■ Clause A is aimed at conspiracies to deter parties or witnesses from attending or testifying in any court of the United States. The district court granted summary judgment for defendants on this clause because plaintiffs failed to offer any evidence indicating that defendants attempted to deter a witness or party from attending or testifying in court. We agree.

Plaintiffs contend that defendants conspired not to hire anyone who had asserted a personal injury claim against a member of the oil industry. In essence, they assert that defendants' conspiracy is retaliatory in nature. However, plaintiffs have offered nothing to indicate that this retaliatory conspiracy has deterred anyone from attending or testifying in court. The district court's grant of summary judgment on this clause of Section 1985(2) is affirmed.

### E. Clause B

■ The second clause of Section 1985(2), clause B, creates a cause of action against individuals who conspire to injure a party or witness for having attended or testified in any court of the United States. The district court granted summary judgment for defendants on this clause because plaintiffs did not allege that they were injured because they *attended* or *testified* in court,

but rather only that they were injured because they filed claims. The district court's conclusion is apparently premised on its belief that the phrase "attended or testified" requires actual physical presence in a courtroom. We reject such a narrow reading of the statute.

■ Congress recognized that conspiracies designed to injure parties who turn to the courts can only produce a misapplication of the federal judicial system. Congress enacted the first part of Section 1985(2) in order to protect the sanctity of federal court proceedings and prevent miscarriages of justice. The justice provided by our judicial system, however, does not start on the day of trial. The process of obtaining justice in the court system begins long before a case is called to trial—it is initiated at the moment a party files a complaint. Congress undoubtedly intended to protect the whole course of justice, not just one segment of the system, the trial process. Thus, for the purposes of Section 1985(2) an individual is deemed to have "attended" a court of the United States from the moment that the person files a complaint.

Congress certainly did not exceed constitutional bounds when it provided that an individual "attends" federal court when a complaint is filed. U.S.Const. art. III provides for a federal judiciary and U.S.Const. art. 1, § 8, cl. 18, provides that Congress shall have the power to make laws necessary and proper for executing all powers vested by the Constitution and the government of the United States. It is beyond question that Congress has the power to do what it did in the first part of Section 1985(2)—protect the federal judicial system from efforts to obstruct justice. *See McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819).

■ Defendants contend that, even if the first part of Section 1985(2) is read expansively, plaintiff is still not entitled to relief for two reasons. Initially, defendants argue that the *Griffin* requirement of a class-based, invidiously discriminatory animus is

also required by Section 1985(2), clause B. A careful reading of *Griffin* and the statute does not support defendants' argument.

The invidious animus requirement of *Griffin* is a test established for determining whether a conspiracy was designed to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," as required by Section 1985(3). Unlike Section 1985(3) and clauses C and D of Section 1985(2), clause B of Section 1985(2) is not limited to conspiracies aimed at the deprivation of equal protection or equal privileges and immunities. There is no reference whatsoever in the first part of Section 1985(2) to the term equal protection. Although defendants urge that we read the *Griffin* limitation into the first part of Section 1985(2), neither the statute nor the legislative history will support such an interpretation. The presence of the invidious animus requirement in Section 1985(3) and clauses C and D is persuasive evidence that Congress knew how to impose that limitation when it was intended. *See, Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (holding *Griffin* inapplicable to Section 1985(1)). This Court declines to impose the invidious animus requirement where Congress clearly did not intend for it to be applied.

Defendants' second contention is that this Court's decision in *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc), should be applied in the case at bar. The issue in *McLellan* was whether an employee who was discharged from private employment because he filed a voluntary petition in bankruptcy stated a claim under Section 1985(3). This Court concluded that Section 1985(3) requires that the alleged acts of defendants must be illegal, independent of Section 1985(3).

If the object of the defendant's conspiracy did not include a violation of some law (independent of Section 1985(3) itself) which protects the plaintiff, the conspiracy could not have deprived the plaintiff of the "protection of the laws." Put

more simply, there can only be a deprivation of the rights of a plaintiff when the action of the defendants is *otherwise* illegal.

*Id.* at 925. Defendants in the case at bar contend that plaintiffs have failed to satisfy the independent illegality requirement of *McLellan*.

This Court need not decide whether these plaintiffs have satisfied the *McLellan* requirement of independent illegality, because that requirement is not applicable to the first part of Section 1985(2). The *McLellan* court developed the independent illegality requirement when it examined the language of Section 1985(3) dealing with "equal protection of the laws," and concluded that private persons can only deprive others of equal protection of the laws by violating a law already in existence. In the first part of Section 1985(2), as we noted above when discussing the applicability of *Griffin*, there is no mention of the term "equal protection of the laws." This Court must assume that Congress omitted the term "equal protection" from the first part of Section 1985(2) because it did not intend for the limitations associated with that phrase to be applicable to it. Defendants' argument that *McLellan* should be applied is rejected.

Thus, in order to survive defendants' motion for summary judgment, plaintiffs need only raise a factual question about whether defendants injured them on account of their having attended or testified in court. Plaintiffs have done this. Plaintiffs' summary judgment evidence establishes that defendants refused to hire them because they filed personal injury claims. If the trier of fact accepts plaintiffs' version, plaintiffs would be entitled to relief under Section 1985(2). The district courts grant of summary judgment on this clause was *partially* inappropriate. *See*, Part IV.

## IV. *The Appropriate Class*

Not all of the certified class of plaintiffs have a cause of action under clause B. Section 1985(2), clause B only provides a cause of action for individuals injured be-

cause they attended or testified in *any court of the United States.* The term "any court of the United States" does not mean any court physically located in the United States, but rather denotes courts that are part of the federal judicial system. *See Seeley v. Brotherhood of Painters, Decorators, and Paper Hangers of America,* 308 F.2d 52 (5th Cir. 1962); 28 U.S.C.A. § 451 (Supp.1980). State worker's compensation boards, state courts, and federal worker's compensation boards are not included in the term "any court of the United States." *Id.* Accordingly, the only plaintiffs that may avail themselves of Section 1985(2), clause B are those who allege they were victims of employment discrimination because they filed claims in federal court.

### V. *Conclusion*

The district court's grant of summary judgment against those plaintiffs who were allegedly discriminated against because they asserted a personal injury claim before a state workers compensation board, in state court, or before a federal workers compensation board is affirmed. The district court's grant of summary judgment against plaintiffs who allege they were discriminated against because they filed a personal injury claim in federal court is reversed. These plaintiffs have a cause of action under Section 1985(2), clause B that survives summary judgment. The district court's grant of summary judgment against plaintiff Versie Kimble on his claim for damages is also reversed. Kimble also has a cause of action for damages under clause B that survives summary judgment.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

AINSWORTH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that plaintiff's claims do not state a cause of action under clauses A, C, and D of Section 1985(2), 42 U.S.C. § 1985(2). I respectfully dissent, however, from the majority's decision that a cognizable claim is presented under clause B of Section 1985(2).

The wording of clause B forbids two or more persons from conspiring to "injure [a] party or witness in his person or property on account of his having . . . attended or testified" in a court of the United States. 42 U.S.C. § 1985(2). As the majority properly recognizes, plaintiffs did not allege any injury by virtue of having attended or testified in federal court. Instead, plaintiffs alleged that they were injured because they filed workmen's compensation claims in federal and state courts or before state and federal administrative tribunals. In the district court, Judge Rubin held that such allegations did not state a cause of action under clause B. Specifically, he wrote that:

The Conspiracy to Obstruct Justice Act does not create a claim for every conspiracy entered into with intent to deny a citizen access to a court, or to retaliate against a citizen for his utilization of the federal court system. If they are to come within the plain language of the statute, plaintiffs must allege that they were injured on account of having *attended* or *testified in* federal court. This they have not done. They allege that they suffered injury on account of having filed claims in federal court, or in state court, or with workmen's compensation boards created under federal or state law. Nowhere do they contend that defendants discriminated against them—"blacklisted" them—on account of their attendance or testimony in federal court. They reiterate, indeed, that such discrimination was causally related to the *filing* of claims. At most, the conspiracy charged was aimed at injuring the plaintiffs on account of their having asserted a claim or filed a lawsuit. Congress did not undertake to make that behavior actionable.

[7] It can be argued with some cogency that the Congress ought to protect access to all federal courts, and make it tortious for anyone to retaliate against a person for using those courts. But Section 1985(2) does not, in its broadest possible reading, prohibit such conduct. Because the action is based on a statute, we

need not consider the extent to which the Constitution may implicitly compel the government to provide unrestricted access to federal courts or the question whether the denial of any such right would create a cause of action for damages in tort. *See United States v. Kras*, 1973, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626, involving an unsuccessful challenge to the constitutionality of exacting a filing fee before bankruptcy proceedings could be commenced where the constitutional nexus (the Bankruptcy Clause) was held insufficient to ground an individual right.

There is little doubt that the Constitution grants authority to the Congress to enact legislation that would prohibit retaliation against a person for resorting to federal court. In the Conspiracy to Obstruct Justice Act it has undertaken to make actionable conduct aimed at deterrence of, or retaliation for, attendance or testimony in federal court; it might go further and forbid retaliatory conduct aimed at the filing of a federal lawsuit or assertion of a federal claim. Whether or not it has the power to make it a federal tort to retaliate against a person for resorting to state legal procedures is an issue that need not be faced here. There is no federal tort law. Nor does the plaintiffs' suit rely upon general tort law. State law may—or may not—make tortious the kind of conduct alleged. Plaintiffs cause of action in this court, however, rests on Section 1985(2), and that statute does not extend to the action complained of.

*Kimble v. D.J. McDuffy, Inc.*, 445 F.Supp. 269, 276–77 (E.D.La.1978) (footnotes omitted).

The majority rejects Judge Rubin's reading of the "attended or testified" language of the statute finding it unnecessarily narrow. Instead, the majority interprets "attendance" to include the initial act of filing a lawsuit since "Congress undoubtedly intended to protect the whole course of justice, not just one segment of the system, the trial process." The majority adopts this expansive reading in light of the need "to

protect the sanctity of federal court proceedings."

As Judge Rubin noted, the question presented in this case is not whether Congress possesses the *power* to enact legislation forbidding retaliatory conduct against a party for filing suit in federal courts. Rather, the issue is limited to determining whether the existing language of Section 1985(2) achieves that result. In my view, the language of the statute does not reach the allegations contained in the present suit. Accordingly, I would affirm Judge Rubin's opinion in its entirety.

Section 1985(2) has not generated much litigation. *See Brawer v. Horowitz*, 535 F.2d 830, 837 (3d Cir. 1976) (construing the "perfidious syntax of § 1985(2) with some reserve" given the "dearth of authority to light our way"). The majority of decisions arising under Section 1985 have involved Section 1985(3). In this regard, the Supreme Court's landmark opinion in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) is instructive. In *Griffin*, the Court for the first time held that Section 1985(3) reached conspiracies by private parties to deny others the equal protection of the laws. Yet, the Court carefully delineated the cause of action cognizable under Section 1985(3). "The constitutional shoals that would lie in the path of interpreting Section 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . [T]here must be some racial, or perhaps otherwise class-based, animus behind the conspiratorial actions." *Griffin, supra*, 403 U.S. at 101–02, 91 S.Ct. 1798.

In accordance with *Griffin*, this court has limited cases brought under Section 1985(3) to those alleging racial or class-based animus. In *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (*en banc*), we considered a claim by an employee that he was discharged for filing a peti-

tion in bankruptcy in contradiction of company rules. Relying on *Griffin*, the *en banc* court held that the plaintiff's allegations did not state a cause of action under Section 1985(3). We stated that:

> The Ku Klux Act[1] was passed amid the lawless conditions existing in the South after the Civil War. A major aim of the legislation 'was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.' It is readily apparent from the title of the bill itself, 'An Act to enforce the Provisions of the Fourteenth Amendment . . . ,' that the key concern of the legislators was to put force behind the Civil War Amendments by providing an avenue for the redress of injuries suffered by the class of newly emancipated slaves. Nowhere have we seen it suggested that Congress was concerned about discrimination being practiced against insolvents.

*McLellan, supra*, 545 F.2d at 932 (footnotes omitted). Ironically, under today's majority opinion, the plaintiff in *McLellan* could have avoided dismissal of his lawsuit simply by adding an allegation asserting jurisdiction under Section 1985(2) since the alleged discrimination in that case arose from the filing of a federal bankruptcy action.

To be sure, both *Griffin* and *McLellan* involved cases arising under Section 1985(3) and not Section 1985(2). This fact, however, does not render the cases inapplicable to the present dispute. Indeed, this court has held that *Griffin's* racial or class-based animus requirement is fully applicable to claims brought pursuant to the clauses C and D of Section 1985(2). *Slavin v. Curry*, 574 F.2d 1256, 1262, *modified*, 583 F.2d 779 (5th Cir. 1978). *See Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978); *Hahn v. Sar-*

gent, 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Furthermore, in *Jones v. United States*, 401 F.Supp. 168 (E.D.Ark. 1975), *aff'd*, 536 F.2d 269 (8th Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977), the district court held that *Griffin's* requirements also applied to actions brought under the first part of Section 1985(2). The court reasoned that since the Congressional history relied on by the Supreme Court in *Griffin* was generally applicable to all of Section 1985, the concern evidenced by the limitation to racial and class-based animus should apply in all cases brought under Section 1985(2) as well as in Section 1985(3). The Eighth Circuit affirmed the holding.

The majority rejects the view that actions brought under clause B require racial or class-based animus since that clause does not contain language paralleling Section 1985(3)'s proscription of a conspiracy denying others the equal protection of the laws. Since Congress failed to include the equal protection language in clause B of Section 1985(2), Congress must have intended to protect the entire process of litigation without any racial or class-based animus requirement. The majority's reasoning is unpersuasive. Even assuming that the difference in language between clause B of Section 1985(2) and Section 1985(3) compels a holding that clause B does not necessitate a racial or class-based animus requirement, the majority's ultimate conclusion that clause B protects persons who file lawsuits in federal courts does not follow. *Griffin* evidenced a general concern that actions brought under Section 1985 must be carefully delineated in accordance with the statutory purposes of the Act. The specific limitations applied in *Griffin* for Section 1985(3) suits may not be applicable to clause B of Section 1985(2), but *Griffin's* general concern for carefully defining the contours of Section 1985 litigation in order to avoid the creation of generalized federal tort law is fully applicable. In my view, Judge Rubin's construction of the language in clause

---

1. The present language and structure of Section 1985(2) evolved from Section 2 of the Ku Klux Act of 1871. *See B. Schwartz, Statutory*

*History of the United States: Civil Rights (Part 1)* 591 (1970). Minor grammatical changes and restructuring were made in 1874.

B is precisely the carefully balanced interpretation required by *Griffin.*

The need to limit actions brought under the first part[2] of Section 1985(2) is aptly demonstrated by the Third Circuit's opinion in *Brawer.* In that case, the court considered a claim that the defendants conspired to use perjured testimony and to conceal exculpatory evidence in order to influence the verdict of the jury. Jurisdiction was alleged under the first part of Section 1985(2). After holding that racial or class-based animus was not required, the Third Circuit found that other limitations existed to define the cause of action under Section 1985(2). "We understand the first part of § 1985(2) to concern itself with conspiratorial conduct that *directly* affects or seeks to affect parties, witnesses or grand or petit jurors. The allegations of this complaint are different in kind. At best, the allegation is that the conspiracy 'influenced' the jurors by precluding them from considering fully accurate evidence. We deem this 'influence' to be too remote to fit within the intended ambit of § 1985(2)." *Brawer, supra,* 535 F.2d at 840. *See Brown v. Chaffee,* 612 F.2d 497 (10th Cir. 1979). When applied to the allegations in this case, *Brawer* supports Judge Rubin's interpretation of clause B.

It is axiomatic that our analysis of statutory law "must begin with the language of the statute itself." *Touche, Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977). The plain meaning of the word "attend" supports Judge Rubin's interpretation. Attend, simply put, means "to be present at." *Webster's Third International Dictionary* 140 (3d Ed. 1961).

Also, consideration of the legislative history supports the view that Congress intended the word "attend" to be given its ordinary meaning. Passage of the Ku Klux Klan Act was "motivated by a desire to prevent and punish acts of terror or intimidation that threatened the attempt to create a political environment hospitable to equality." Comment, *A Construction of Section 1985(c) in Light of Its Original Purpose,* 46 U.Chi.L.Rev. 402, 405 (1979). In light of the actual acts of violence that threatened the sanctity of federal courts, Congress meant Section 1985(2) to protect a party based on his physical presence while attending or testifying in court. In this case, no allegations were made that plaintiffs were injured because they attended or testified in federal court. Given the background of violence and direct intimidation prevalent at the time of the original passage of Section 1985(2) the majority nevertheless and without any specific reference to Congressional history, finds that Congress intended to create a federal tort remedy for an employer's economic use of public information relating to the filing of federal lawsuits. Section 1985(2) was not designed as a vehicle to remedy such allegedly tortious acts of employers against employees pursuing workmen's compensation claims. Rather, it was intended to protect against direct violations of a party's right to attend or testify in federal court. This clear Congressional purpose is best served by construing the statutory language in its ordinary meaning so that only direct interference with the federal courts is prohibited in accordance with the general concerns enunciated by *Griffin.* Accordingly, I dissent from the majority's construction of clause B of Section 1985(2).

---

2. While the majority and Judge Rubin separated Section 1985(2) into four subparts, other courts and commentators have considered Section 1985(2) as being divided into two parts separated by the semi-colon appearing in the middle of the Section. The first part, encompassing clauses A and B in the majority's structure, concern conspiracies against persons with respect to federal courts, whereas the second part, involving clauses C and D in the majority's analysis, concerns conspiracies in relation to state courts. *See generally* Comment, *Private Actions Under 42 U.S.C. § 1985(b) for Conspiracies to Impede the Due Course of Justice,* 27 Kansas L.Rev. 621, 625 (1979).