**Versie KIMBLE, and all others similarly situated**

v.

**D. J. McDUFFY, INC., and Industrial Foundation of the South, and all of its subscribers.**

**Civ. A. No. 73–1416.**

United States District Court, E. D. Louisiana.

Jan. 24, 1978.

Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, La., for plaintiff.

George J. Petrovich, Jr., Dixon & Petrovich, Fort Worth, Tex., Harry S. Redmon, Jr., and Rutledge C. Clement, Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for D. J. McDuffy, Inc. and Industrial Foundation of the South and all of its subscribers, defendants.

ALVIN B. RUBIN, Circuit Judge.[*]

The fallout following the fusion of new views with the interpretation of an ancient statute generates mutations and sometimes new forms of legal right. Here we are concerned with the extent of change wrought in the Federal Conspiracy to Obstruct Justice Act[1] as a result of the reinterpretation of a related statute, commonly known as the Ku Klux Klan Act, in *Griffin v. Breckenridge*, 1971, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338. Each of these reconstruction era statutes now forms part of Section 1985, U.S.C., Title 42. The issue is whether the Obstruction of Justice Conspiracy Act, thus reinterpreted in the light of *Griffin*, grants a cause of action for an alleged conspiracy among private persons not to employ someone who has made a claim for personal injury.

I.

The interpretation of the statute determines the ruling on the defendants' motion for summary judgment. In the normal course, summary judgment will be granted only when there is no genuine dispute concerning any material fact.[2] In the present case, the plaintiffs have failed to respond fully to the defendants' motion and supporting affidavits as required by Rule 56, Federal Rules of Civil Procedure. Nonetheless, rather than delay matters further in this suit instituted in 1973, now already almost five years old, we shall assume that the plaintiffs might adduce additional affidavits or depositions to support what they contend in briefs and unverified factual statements. The issue is whether, given the benefit of the assumption that these could be proved, and that all inferences favorable to the plaintiffs would be drawn from them, the defendants are nonetheless entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 1970, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; *U. S. v. Diebold, Inc.*, 1962, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176; *Tyler v. Vickery*, 5th Cir. 1975, 517 F.2d 1089; *Pitts v. Shell Oil Company*, 5th Cir. 1972, 463 F.2d 331; *Croley v. Matson Navigation Co.*, 5th Cir. 1970, 434 F.2d 73; *Gross v. Southern Ry. Co.*, 5th Cir. 1969, 414 F.2d 292; also, *see* Wright and Miller, Federal Practice and Procedure, chap. 8, § 2727, p. 526. Acknowledging that the defendants, who seek summary judgment, will concede little of the following to be undisputed, and will argue that much of it is not true or not material, we begin with a resume of the facts that the plaintiffs contend they could prove.

In 1969, Mr. Kimble sustained an injury to his right shoulder while working for Noble Drilling Company. He filed a suit for damages in this court. It resulted in a jury verdict in his favor for $35,000. In December, 1972, he began work for McDuffy. The following April, McDuffy fired him because it learned of his prior suit against

---

[*] Sitting as District Judge by special designation of Chief Judge John R. Brown.

1. 42 U.S.C.A. § 1985(2).

2. Fed.R.Civ.Proc., Rule 56.

Noble. He then sought work from other companies, here named as co-defendants; they refused to consider him because he had sued McDuffy. He later learned that Industrial Foundation of the South (IFS), a corporation, engages in collecting data for the oil industry, including information concerning personal injury claims. IFS furnishes its members, all of them employers in the oil drilling industry, with the names of those persons who have either made a claim for personal injuries or filed a suit against any company in that industry for personal injuries connected with their employment. This suit is brought as a class action on behalf of all other persons who sought employment in the offshore industry and were denied it because their names had been placed into the IFS suit index system as a result of a personal injury claim or lawsuit, whether or not the claim was for a tort or for workmen's compensation, whether it was based on state or federal law, and whether or not it resulted in the filing of litigation. The suit seeks an injunction against the continuance of these practices. Class action status with respect to the damage claims has been denied; only Mr. Kimble now seeks damages.

For the reasons stated, the version of the facts most favorable to the plaintiffs has been assumed. Defendants have, however, presented affidavits and other evidentiary matter tending to support a different view: they say that neither Mr. Kimble nor anyone else has ever been denied employment because of the assertion of a claim. Companies in the oil industry must assure themselves that their employees are in good physical condition. In their employment applications, these companies inquire whether the applicant has ever been injured. The question is frequently answered in the negative by applicants who have, in fact, been injured and are thus not suitable for employment. The IFS collects data concerning persons who have asserted claims for injuries during employment so that prospective employers may have accurate information by which to evaluate the physical condition of an applicant and the truthfulness of his application. But for present purposes, we postulate the plaintiffs' version.

## II.

The plaintiffs' claims are founded entirely on the Federal Conspiracy to Obstruct Justice Act, § 1985(2),[3] which creates four separate causes of action. They are more fully analyzed below. However, one of these is a conspiracy, defined in the statute as follows:

If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . . .

Thus, the statute applies if (1) two or more persons conspire (2) for the *purpose* of impeding the due course of justice (3) with the *intent* to deny to any citizen the equal protection of the laws *or* (alternate 3) to injure him for lawfully enforcing the right of any person to the equal protection of the laws.

The plaintiffs' argument is that the conspiracy to deny them jobs because they had made claims for personal injuries was for the purpose of hindering, obstructing or defeating the due course of justice, and was entered into either:

**3.** No attempt is made to invoke admiralty jurisdiction. *See Carroll v. Protection Maritime Insurance Co., Ltd.*, 1st Cir. 1975, 512 F.2d 4. Nor is any complaint made under the anti-trust laws. *Ibid.* There being no suggestion of diversity jurisdiction, we need not consider whether the conduct complained of might be tortious under state law. *See*, for example, ALI, The Restatement of Torts, 2d, § 766; W. Prosser, The Law of Torts, § 129 at 927 (4th ed. 1971). See also *Cust v. Item Company*, 1942, 200 La. 515, 8 So.2d 361; *New Orleans Opera Guild v. Local 174, Musicians M.P.U.*, 1961, 242 La. 134, 134 So.2d 901; *Re-Steel, Inc. v. Haas and Haynie-Tudor Construction Company*, La. App.1977, 344 So.2d 696. Compare *Jacobson v. Industrial Foundation of the Permian Basin*, 5th Cir. 1972, 456 F.2d 258 (per curiam).

(a) for the purpose of depriving them of equal protection of the laws, or,

(b) to injure them for lawfully enforcing or attempting to enforce their right to present their claims, in general, and, particularly, their right to file suit in federal court.

The statute does not in terms apply to every act, however conspiratorial, directed at a person for the purpose of impeding or obstructing justice. It reaches only those acts done with a specific intent, the intent to deny equal protection or to cause injury to individuals who have lawfully enforced their rights to equal protection.

The plaintiffs do not invoke Section 1985(3), the Ku Klux Klan Act. However, the two sections are intimately related. Part of the Ku Klux Klan Act has recently been interpreted by the Supreme Court; as that interpretation must serve as the genesis for determining the interpretation of the remainder of Section 1985, we gain insight by examining Section 1985(3).

With deletion of those parts that are not involved here, the Ku Klux Klan Act reads:

> If two or more persons . . . conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . .; [and] in any case of conspiracy set forth in this section; if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages . . ..

Thus, that Act purports to deal with either a conspiracy to deprive others of equal protection of the laws or going in disguise for that purpose. Of course, the conspiracy, to be actionable, must be followed by an overt act.

The issue in *Griffin* was whether this statute created a cause of action for damages against private persons for their own conduct not associated with official state action. Holding that the statute reaches actions by private individuals, the court said that the sweep of the statute is "as broad as [its] language." 403 U.S. at 97, 91 S.Ct. at 1796. It protects equal privileges and immunities under the laws "from invasion by private persons." *Ibid.*

But this "does not, however, mean," it continued, "that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." 403 U.S. 101–2, 91 S.Ct. at 1798. "The constitutional shoals that would lie in the path of interpreting Section 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . [T]he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps, otherwise class-based animus behind the conspiratorial actions. The conspiracy, in other words, must aim at a deprivation of the equal employment of rights secured by the law to all."

The animus requisite for an action under the Ku Klux Klan Act must, therefore, be directed against a group ("class") having common characteristics of an inherent nature, not a congeries of persons who become a "class" by virtue of the denial to them of some advantage or their involvement in a single common kind of action. Otherwise, as *Griffin* and several other cases[4] have admonished, this section would be converted into a general tort law when-

4. *McLellan v. Mississippi Power and Light Co.*, 5th Cir. 1977, 545 F.2d 919, 924, 928–9 (en banc); *Lopez v. Arrowhead Ranches*, 9th Cir. 1975, 523 F.2d 924; *Jackson v. Cox*, 5th Cir. 1976, 540 F.2d 209; *Cohen v. Illinois Institute of Technology*, 7th Cir. 1975, 524 F.2d 818, 829; *Arnold v. Tiffany*, 9th Cir. 1973, 487 F.2d 216, 218–19, cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881.

ever the wrongful conduct is directed at more than a single person.

## III.

Omitting the portions applicable to juries and jurors, Section 1985(2) includes four separate clauses. Each has a different thrust, so each must be separately analyzed. It applies:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.

We turn first to the clauses listed above as C and D. Clause C refers to a conspiracy entered into with a specific intent: "to deny to any citizen the equal protection of the laws;" Clause D similarly refers only to a conspiracy directed at a person because the victim lawfully enforced the right of any person or class of persons to equal protection.

■ Though *Griffin* dealt only with the Klan Act, its rationale applies to the Conspiracy to Obstruct Justice Act, which has also been made a part of Section 1985. To demonstrate an intent to deny equal protection of the laws requires showing something more than the denial to one person or to several persons of a right that is enforceable by others. Thus, many courts have concluded that the Conspiracy to Obstruct Justice Act should be interpreted in

the same manner. *See*, for example, *Hahn v. Sargent*, 1st Cir. 1975, 523 F.2d 461, 469; *Smith v. Yellow Freight System, Inc.*, 10th Cir. 1976, 536 F.2d 1320, 1323; *Stern v. United States Gypsum, Inc.*, 7th Cir. 1977, 547 F.2d 1329, 1341; *Shaw v. Garrison*, E.D.La.1975, 391 F.Supp. 1353, 1370–71, *aff'd*, 545 F.2d 980; *Jones v. United States*, E.D.Ark.1975, 401 F.Supp. 168, 172–3, *aff'd*, 8th Cir. 1976, 536 F.2d 269, 271; *Cartolano v. Tyrrell*, N.D.Ill.1976, 421 F.Supp. 526, 531–2; *Kelly v. Foreman*, S.D.Tex.1974, 384 F.Supp. 1352. The Act does not reach all conspiracies to obstruct justice but only those entered into with the specific intent or for the purpose stated in it.

In the present case no claim is made that the defendants were motivated by any racial or class-based animus, as those terms were intended in *Griffin*. No racial animus by the defendants is even intimated. The only "class" that is suggested as a possible target of their conspiracy is one composed, broadly, of all oil industry workers who make any claim for personal injury in any fashion.

Personal injury claimants are a class of people for some purposes. A group of personal injury claimants has been held to be a class in this lawsuit for purposes of a class action. There is a community of interest in this group that warrants treating it as a class for purposes of a class action. But the only characteristic this class shares is that of making a claim; this makes it a class within the meaning of that word as used in Rule 23 of the Federal Rules of Civil Procedure. It does not follow, however, that animus against such a group can be considered class-based. They share no other trait—racial, religious, ethnic, sexual, geographic, or economic.

■ The coincidence that the single word, "class", is used to describe both kinds of groups cannot justify converting a homonym into a legal identity of the different meanings. When the court in *Griffin* suggested that "perhaps . . . class-based animus" might suffice to activate the Ku Klux Klan Act, it did not intend to sweep into that Act any conspiracy that was

aimed at two or more people with a single common trait. If the statute were that panoramic, then a conspiracy directed at pedestrians who walk on a certain street, at motorists who drive on a particular road, or at people who wear blue shirts, would be equally embraced.

This is why the court said, in *Lopez v. Arrowhead Ranches*, 9th Cir. 1975, 523 F.2d 924, 928:

> As *Griffin* narrowed the cases in which a deprivation of equal rights is actionable to those where the injury is class motivated, it seems to us a necessary corollary that the class animus alleged be consistent with the deprivation of rights alleged . . . Of itself, the creation of a class of victims by tortious conduct does not bring a claim within § 1985(3); such a class is created by every tort. Plaintiffs have not and cannot allege, as they must if they would succeed, anything to distinguish them as intended victims other than that they belong to the class possessing the rights deprived—a circumstance true of all potential employees involved. Under *Griffin* we think the class status providing the motivating animus must be created by a fact other than the possession of the right deprived—otherwise virtually every conspiratorial deprivation of a primary right would be actionable under § 1985(3) regardless of the pertinent statutory enforcement provisions.

### IV.

■ Because, then, the plaintiffs have not alleged or shown any conspiracy entered into with intent to deny them or any class to which they belong equal protection of the law, or to injure them for lawfully expressing the right of any person to equal protection of the law,[5] summary judgment will be entered as to those parts of the claims that rest on Clauses C and D of the statute.

**5.** Because we do not find that plaintiffs have stated a claim under the second two clauses of Section 1985(2), insofar as they lack the requisite element of class-based animus, we need not consider the possible constitutionality of a

■ The plaintiffs also rely on the first clause of the Conspiracy to Obstruct Justice Act, which deals with conspiracies to deter parties or witnesses from attending or testifying in court. No factual evidence has been adduced nor has even any allegation been made that any defendant attempted to deter or intimidate any witness or party by force, intimidation, or threat. In *Brawer v. Horowitz*, 3rd Cir. 1976, 535 F.2d 830, 840, the court said:

> We understand the first part of § 1985(2) to concern itself with conspiratorial conduct that *directly* affects or seeks to affect parties, witnesses or grand or petit jurors. The allegations of this complaint are different in kind . . . We deem this 'influence' to be too remote to fit within the intended ambit of § 1985(2).

It is contended that the defendants' conspiracy was designed to prevent the hiring of anyone who had worked in the oil industry and had asserted a personal injury claim. If this conspiracy had been made known to claimants before they filed their claims, it might have deterred persons from making claims or filing lawsuits on them. But the conspiracy is alleged to have been covert; it could, under the charges made, have been only retaliatory. If it were only covert and retaliatory, it could not have deterrent effect. Even if it was known in advance to the victims, the conspiracy described was not directed at persons who attended or testified in a court of the United States; it was directed at those who made claims whether or not these resulted in any action in a federal court ("a court of the United States").

By contrast, the plaintiff in *Kelly v. Foreman*, S.D.Tex.1974, 384 F.Supp. 1352, alleged *inter alia* that he was intimidated and threatened in order to cause him to refuse to give information to law enforcement officers, and, more on point, to refuse to testify against certain of the defendants.

statute that creates a federal cause of action against private parties for impeding justice in a state or territory or for injuring a person for lawfully enforcing his rights.

In the present case, it may be urged that the plaintiffs have now revealed the conspiracy and that, in the future, it will have deterrent effect. But the suit is predicated on the tort alleged to have occurred in the past, when the plan was secret.

The plaintiffs' claim under the second clause, "B", of Section 1985(2) is no more successful. The Conspiracy to Obstruct Justice Act does not create a claim for every conspiracy entered into with intent to deny a citizen access to a court, or to retaliate against a citizen for his utilization of the federal court system. If they are to come within the plain language of the statute, plaintiffs must allege that they were injured on account of having *attended* or *testified in* federal court. This they have not done. They allege that they suffered injury on account of having filed claims in federal court, or in state court, or with workmen's compensation boards created under federal or state law. Nowhere do they contend that defendants discriminated against them—"blacklisted" them—on account of their attendance or testimony in federal court. They reiterate, indeed, that such discrimination was causally related to the *filing* of claims.[6] At most, the conspiracy charged was aimed at injuring the plaintiffs on account of their having asserted a claim or filed a lawsuit. Congress did not undertake to make that behavior actionable.[7]

■ It can be argued with some cogency that the Congress ought to protect access to all federal courts, and make it tortious for anyone to retaliate against a person for using those courts. But Section 1985(2) does not, in its broadest possible reading, prohibit such conduct. Because the action is based on a statute, we need not consider the extent to which the Constitution may implicitly compel the government to provide unrestricted access to federal courts or the question whether the denial of any such right would create a cause of action for damages in tort. *See United States v. Kras*, 1973, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626, involving an unsuccessful challenge to the constitutionality of exacting a filing fee before bankruptcy proceedings could be commenced where the constitutional nexus (the Bankruptcy Clause) was held insufficient to ground an individual right.

There is little doubt that the Constitution grants authority to the Congress to enact legislation that would prohibit retaliation against a person for resorting to federal court. In the Conspiracy to Obstruct Justice Act it has undertaken to make actionable conduct aimed at deterrence of, or retaliation for, attendance or testimony in federal court; it might go further and forbid retaliatory conduct aimed at the filing of a federal lawsuit or assertion of a federal claim.[8] Whether or not it has the power to make it a federal tort to retaliate against a person for resorting to state legal procedures is an issue that need not be faced here. There is no federal tort law. Nor does the plaintiffs' suit rely upon general tort law. State law may—or may not—make tortious the kind of conduct alleged.

---

6. *See* Plaintiffs' Complaint, p. 1; Memorandum in Support of Certification of the Class, pp. 1, 5, 11, 13, 14, 18; Plaintiffs' Second Supplemental Memorandum in Opposition to Motion to Dismiss, p. 2.

7. Furthermore, plaintiffs have not adduced any evidence of retaliatory motivation. It is not alleged in their complaint; indeed, only twice in their many submitted papers to this court did they contend that there was any motivation of a retaliatory, rather than a purely economic, nature. (Plaintiffs' Memorandum in Opposition to Motion to Dismiss, p. 1.) The statute requires a conspiracy to injure on account of federal court activities. If defendants' conduct is explained by purely self-interested economic reasons, then the injury to the plaintiffs cannot be said to be the aim of their behavior, but is an incidental result of an employment policy that is, at worst, "callous," as plaintiffs assert elsewhere. Compare *Crawford v. City of Houston, Texas*, S.D.Tex.1974, 386 F.Supp. 187.

8. Compare the Federal Juror's Act, which at present does not prohibit a private employer from discharging an employee who is called to jury service. Congress now has under consideration a Senate Bill, S. 2075, and a House Bill, H.R. 7810; § 61875 of both, "Employment Rights", would make such discharge a federal offense.

Plaintiffs' cause of action in this court, however, rests on Section 1985(2), and that statute does not extend to the action complained of.[9]

For these reasons, the motion for summary judgment is GRANTED, without prejudice to the rights that the plaintiffs may have, if any, under state law.

---

9. The constitutional source of Congressional authority to enact these federal court-related clauses of Section 1985(2) was noted by the Third Circuit in *Brawer v. Horowitz, supra.* "The first half of (2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses, grand or petit jurors, in any court of the United States. The federal nexus, then, is not the class-based, invidiously discriminatory animus required by the second half of the subsection, but the connection of the proscribed activities to a federal court." Article III of the Constitution establishes "The judicial Power of the United States." Article I, § 8, cl. 18, gives to Congress the power "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States . . .."

Because the issues discussed are sufficient to dispose of the case, we do not reach the further question whether to constitute a violation of Section 1985(2), it must be shown that the acts performed were independently illegal apart from the Section 1985(2) prohibition. *See McLellan v. Mississippi Power and Light Co.,* 5th Cir. 1977, 545 F.2d 919, 925–7 (en banc).