No. 81–536. KIMBLE *v.* D. J. MCDUFFY, INC., ET AL.
C. A. 5th Cir. Certiorari denied.

JUSTICE WHITE, dissenting.

The first part of 42 U. S. C. § 1985(2) (1976 ed., Supp. III)
creates a private right of action for damages based on certain
forms of interference with federal judicial proceedings:

> "If two or more persons in any State or Territory con-
> spire to deter, by force, intimidation, or threat, any
> party or witness in any court of the United States from
> attending such court, or from testifying to any matter
> pending therein, freely, fully, and truthfully, or to injure
> such party or witness in his person or property on ac-
> count of his having so attended or testified."

The second part of § 1985(2) creates a similar cause of action
for interference with state proceedings:

> "[I]f two or more persons conspire for the purpose of im-
> peding, hindering, obstructing, or defeating, in any man-
> ner, the due course of justice in any State or Territory,
> with intent to deny to any citizen the equal protection of
> the laws, or to injure him or his property for lawfully en-
> forcing, or attempting to enforce, the right of any per-
> son, or class of persons, to the equal protection of the
> laws."

These two clauses are separated by a semicolon: The lower
federal courts have reached conflicting conclusions concern-
ing the effect of that semicolon.

Petitioner was employed as an oil driller by respondent D. J. McDuffy, Inc., from December 1972 until April 1973. In March 1973, McDuffy joined the Industrial Foundation of the South (IFS). IFS is a nonprofit corporation, the purpose of which is to provide information to its members concerning workers' compensation claims and personal injury lawsuits in state and federal courts filed by employees or prospective employees of the employer/members. Apparently, the employer/members believe that they can reduce their employers' insurance and workers' compensation costs by obtaining this information, which may indicate whether a particular employee is likely to be an insurance or compensation risk.

Petitioner alleges that when McDuffy joined IFS, McDuffy learned that petitioner had previously pursued a lawsuit in federal court against a former employer and had obtained a large judgment. Contending that he was fired by McDuffy because of this prior suit, petitioner filed a class action in Federal District Court on behalf of all individuals who had been denied employment by IFS members because they had filed workers' compensation or personal injury claims against companies in the oil drilling business.[1] The complaint, based entirely on 42 U. S. C. § 1985(2) (1976 ed., Supp. III), sought damages for the class and a permanent injunction enjoining the challenged practices.[2] The District Court granted respondents' motion for summary judgment. It held that the complaint failed to allege facts that would bring this case within either the first or second clause of § 1985(2): A conspiracy by employers to retaliate against employees for filing personal injury suits fails to allege either an intent to deny the equal protection of the laws—required by the second clause—or injury for "having *attended* or *testified* in federal court," 445 F. Supp. 269, 276 (ED La. 1978)—required by the first clause. A divided panel of the Court of Appeals for

---

[1] Besides McDuffy, the defendants included IFS and all its members.

[2] The District Court certified a class only with respect to the claim for injunctive relief.

the Fifth Circuit reversed in part. 623 F. 2d 1060 (1980). It held that under the first clause of § 1985(2)—that part of the statute applicable to interference with federal, as opposed to state, court proceedings—there is no requirement of discriminatory animus and that the scope of the term "attended" includes the filing of a complaint in federal court. A petition for rehearing en banc was granted and a severely divided Court of Appeals affirmed the District Court. 648 F. 2d 340 (1981).

By a vote of 11 to 10,[3] the court held that the language of the statute is not as important as its history. Thus, the fact that the phrase "equal protection of the laws" is included in the second, but not the first, part of § 1985(2) is not as relevant to the proper interpretation of the statute as is the fact that all of § 1985(2) is derived from the Ku Klux Act of 1871. Relying in part on this Court's decision in *Griffin* v. *Breckenridge*, 403 U. S. 88 (1971), the majority held that an action under § 1985(2) must allege a racial or class-based animus. The dissent argued both that *Griffin* was inapplicable because it dealt only with § 1985(3) and that the intent of the Ku Klux Act of 1871 was broader than the majority suggested: "A major concern was restoration of civil authority and preservation of orderly government, including federal court ability to proceed without improper interference." 648 F. 2d, at 350. In their view, the second clause of § 1985(2) included the equal protection language because Congress was concerned about the constitutional source of its power to create federal jurisdiction over state torts or crimes. Because Congress had no similar concern over its authority to protect federal-court proceedings, there was no reason for a similar limitation on the first part of the statute.

This dispute over the scope of § 1985(2) has divided not only the judges of the Fifth Circuit, but various other Federal Courts of Appeals as well. The argument of the dissent

---

[3] Judge Clark concurred in the majority's decision, but stated that it was not necessary to reach this issue.

below was derived largely from *McCord* v. *Bailey*, 204 U. S. App. D. C. 334, 636 F. 2d 606 (1980). That court held that "a class-based, invidiously discriminatory intent is [not] an element of a cause of action under the first clause of section 1985(2)." *Id.*, at 342, 636 F. 2d, at 614. The Court of Appeals for the Third Circuit reached a similar conclusion in *Brawer* v. *Horowitz*, 535 F. 2d 830, 840 (1976):

> "The first half of § 1985(2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses . . . in any court of the United States. The federal nexus, then, is not the class-based, invidiously discriminatory animus required by the second half of the subsection, but the connection of the proscribed activities to a federal court."

On the other hand, the Court of Appeals for the Eighth Circuit agrees with the position taken by the Fifth Circuit in this case: "the racial or class-based discrimination rationale expressed by the Supreme Court in *Griffin* v. *Breckenridge*, 403 U. S. 88, 101–102 [(1971),] applies equally to [§ 1985(2)]." *Jones* v. *United States*, 536 F. 2d 269, 271 (1976).

In order to settle this conflict in the Circuits over the scope of a federal remedy for interference with the federal judicial process, I would grant the petition and set the case for plenary consideration.[4]

---

[4] An alternative ground for the decision below was the majority's reversal of the panel's holding that the filing of a complaint in federal district court falls within the scope of the term "attending" as used in the statute. The fact that the Court of Appeals could have relied solely on this ground to reverse the panel decision does not mitigate the precedential effect of its holding that invidious discrimination must be alleged to state a cause of action under § 1985(2), nor does it lessen the conflict in the Circuits:

"It does not make a reason given for a conclusion in a case *obiter dictum* that it is only one of two reasons given for the same conclusion. . . . [W]e can not hold that the use of the section in the opinion is not to be regarded as authority except by directly reversing the decision in that case on that point." *Richmond Co.* v. *United States*, 275 U. S. 331, 340 (1928).

See also *Massachusetts* v. *United States*, 333 U. S. 611, 623 (1948); *United States* v. *Title Ins. Co.*, 265 U. S. 472, 486 (1924); *Union Pacific R. Co.* v.

*Mason City & Fort Dodge R. Co.*, 199 U. S. 160, 166 (1905).   In any case,
the intended scope of the term "attending" can only be determined by re-
viewing the same legislative history as is involved in resolving the question
of whether an action under § 1985(2) must allege class-based discrimina-
tion.   Because these two questions are so related, I would grant review of
petitioner's second question as well: Whether the term "attending" in-
cludes the filing of a claim in federal court.   I would not, however, grant
review of petitioner's third question: Whether offshore workers constitute
a "discrete class" for equal protection purposes.