Tommy P. TOTEFF and Marilynn Toteff, his wife, Plaintiffs,

v.

VILLAGE OF OXFORD, a municipal corporation, Larry Erickson, Brian Arrowsmith, Arnold R. Simmons, Ella Joyce Simmons, his wife, Greater American Construction Corp., Barron Construction Corp., R.J. Criss Co., jointly and severally, Defendants.

Civ. A. No. 81–74529.

United States District Court, E.D. Michigan, S.D.

Jan. 14, 1983.

Jeannette A. Paskin, Southfield, Mich., for plaintiffs.

Barbara J. Hansen, Birmingham, Mich., for defendants Oxford, Erickson and Arrowsmith.

Lee T. Hoffmann, Jr., Southfield, Mich., for defendants Arnold and Ella Simmons.

Sanford N. Lakin, Larry A. Smith, Southfield, Mich., for defendant Greater American Contracting.

Steven C. Berry, Troy, Mich., for defendant Barron Const. Co.

Stuart A. Ulanoff, Southfield, Mich., for defendant R.J. Criss.

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

PATRICIA J. BOYLE, District Judge.

This suit arises out of the collapse of a wall and ultimately the condemnation of plaintiffs' building in the course of construction of a movie theatre next door to plaintiffs' building. In 1976, plaintiffs, husband and wife, owned as tenants by the entirety property known as the Reed Build-

ing in Oxford, Michigan. Defendants Ella and Arnold Simmons owned the property next to the Reed Building and contracted with co-defendants Greater American Construction Corp., Barron Construction Corp., and R.J. Criss Co. to build a theatre on that property. On June 29, 1976, the south wall of the Reed Building collapsed apparently because of excavations during construction which removed part of the support for the Reed Building. Due to the collapse of the Reed Building, the Village of Oxford issued a stop work order on the construction of the Simmons Theatre. The Simmonses then filed a writ of mandamus against Oxford in the Oakland Circuit Court to lift the stop work order, and the Village of Oxford then joined Tommy Toteff as a necessary party, the Village of Oxford claiming that the present condition of the Reed Building created a hazard. An order was entered in Oakland County requiring Toteff to repair his building, and an order to show cause from the Village of Oxford was subsequently issued why the Reed Building should not be made safe or ordered demolished. Toteff received the order to show cause, appeared at the show cause hearing, and was informed that he had thirty days to come up with a plan to restore the building. The findings of the Oxford hearing officer were then upheld by the Village Council at a meeting held on December 14, 1976, at which time Toteff was informed that he had twenty days to appeal the Village's order to the county court. Toteff having failed to act as required by the order, his building was razed and leased by Oxford to Toteff for his use as a parking lot. On June 10, 1977, Toteff filed a third-party complaint in the Oakland County action against Greater American, Barron, and Criss Co. and a counter-complaint against the Simmonses alleging negligence, trespass, and complaint to quiet title. Mrs. Toteff did not join in either complaint. The Village of Oxford, Arrowsmith (the Village manager), and Erickson (a Village building inspector), the remaining defendants in this action, were not joined by Toteff in the Oakland County action.

In the course of the Oakland County litigation, the Simmonses offered to reimburse Mr. Toteff for the cost of the fallen wall, and again, in the chambers of Circuit Court Judge Alice Gilbert, the Simmonses offered plaintiff Forty Thousand and 00/100 Dollars ($40,000.00). Plaintiff alleges that the judge tried to pressure plaintiff into accepting this figure in settlement, the judge indicating that she thought that defendants had an "ace in the hole" which could defeat plaintiff's claim and that it would be in plaintiff's best interests to settle the case before trial. When counsel for plaintiff refused to so settle, the case proceeded to trial where defendants moved immediately for directed verdict on the ground that plaintiff had failed to join Mrs. Toteff as a necessary party, since Mrs. Toteff was a co-tenant by the entirety of the Reed Building. Mr. Toteff then asked to amend to add Mrs. Toteff but the request was denied. Defendants' motion was granted, and the case was dismissed against the Simmonses, Greater American, and Barron Construction. Criss Co., also a defendant in the Oakland County action, was dismissed with prejudice by stipulation of the parties prior to trial. Plaintiffs have appealed the order directing a verdict in the state court system, and the appeal is presently pending.

The instant action claims a violation of both plaintiff's civil and constitutional rights in failing to give Marilynn Toteff notice of the condemnation contrary to 42 U.S.C. §§ 1982, 1983, 1985; negligence; trespass; conversion; and breach of contract. The conversion claim is based on the theory that defendants unlawfully removed the support bricks and mortar from the Reed Building. The breach-of-contract count is apparently based upon an oral promise by the Simmonses to pay for the fallen wall and, also, is based upon plaintiffs' counsel's written assertion that the Simmonses were willing at one point to pay for the wall. *See* Exhibit 1, Plaintiffs' Response to Motion for Summary Judgment. Although plaintiff makes reference in response to the present motions to a conspiracy between the judge and the state defendants and seeks leave to amend, the sole

reference to a "conspiracy" in the complaint is contained in Paragraph 19: "That Defendants were engaged in a conspiracy to deprive Plaintiffs of their constitutional rights by attempting to take and/or deprive plaintiffs of their property contrary to 42 U.S.C. 1982, 1983 and 1985."

Before the court are various motions for judgment on the pleadings and/or motions for summary judgment filed by defendants. In sum, the various defendants claim that the statute of limitations has run both with respect to Tommy and Marilynn Toteff's claims, although the two claims differ factually and legally. Further, the various defendants claim that plaintiffs have failed to make out their federal cause of action under any of the claimed provisions: 1982, 1983, or 1985. Defendant Criss Co. argues in its motion that this Court should respect the Oakland County Court's dismissal with prejudice of plaintiff's action which is basically the same as the instant action and that the present action adds only a federal claim and a claim for conversion, both of which arise out of the same set of circumstances as the prior action. Criss Co. contends that by stipulating for dismissal, plaintiff impliedly agreed not to pursue his claims against Criss Co. Finally, Criss Co. and the other defendants argue that this Court should abstain pending the outcome of plaintiffs' appeal in the courts of Michigan.

Plaintiff brings the instant action under this Court's federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, alleging a cause of action arising under 42 U.S.C. §§ 1982, 1983, and 1985 and alleging further that "Defendants were engaged in a conspiracy to deprive Plaintiffs of their constitutional rights by attempting to take and/or deprive Plaintiffs of their property." Among the overt acts claimed by plaintiffs in the alleged conspiracy is the allegation that "[d]efendants and each of them did proceed with and destroy the building formerly known as the Reed Building of which Plaintiff Marilynn Toteff was an equal and individual owner." Plaintiffs claim further that the "wrongful, deliberate and intentional" destruction of the Reed Building without notice to co-owner Marilynn Toteff constituted "a violation of Plaintiff Marilynn Toteff's constitutional rights under the United States and Michigan constitutions and a violation of Plaintiffs Civil Rights and constructed [sic] a taking of Plaintiffs [sic] property without due process and without just compensation therefore."

Plaintiffs argue also that their constitutional rights were violated by virtue of defendants' conspiracy with Oakland County Judge Alice Gilbert to deprive them of their rights to a jury trial in the prosecution of their counterclaim against defendants. As noted above, this claim was not pleaded but was asserted in Plaintiffs' Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment at 3–6. These contentions shall be addressed in turn.

### Statute of Limitations:

The first claimed injury to Mrs. Toteff occurred in 1976 when allegedly the defendants caused their wall to collapse, which was followed by the condemnation and razing of her building in early 1977. Mrs. Toteff did not join in her husband's third-party complaint or countercomplaint in June of 1977, and consequently, the next formal involvement she had with this case came when she joined with her husband in the instant lawsuit in December, 1981—a period of approximately four years since the last claimed injury. Mrs. Toteff seeks to avoid the three-year statute of limitations on a theory of "continuing offense" by defendants, alleging that the condemnation conspiracy continued on through the dismissal of her husband's case in Oakland County. However, this Court is not persuaded by this analysis, since there could be no continuing injury to Mrs. Toteff of the nature of that suffered by Mr. Toteff, *i.e.*, denial of a right to jury trial, because she was not a party to the Oakland County action, and she never asked, at least not in a timely fashion, for a jury trial. Consequently, it appears that Mrs. Toteff's only actionable injury would relate to the earlier condemnation proceeding and that claim appears to be time-barred under the following analysis.

■ Since Section 1983 does not contain its own statute of limitations, this Court is bound to follow the most analogous state statute of limitations in its determination of whether or not plaintiffs' claim is time-barred. *Marlowe v. Fisher Body,* 489 F.2d 1057, 1063 (6th Cir.1973). The Sixth Circuit in *Marlowe* held that, while the complaint referred to alleged breaches of contract, in essence, plaintiff's claim was one for a deprivation of civil rights and, as such, was most analogous to the three-year statute of limitations set forth in M.C.L.A. § 600.5805(7) (§ 600.5805(8) as amended) for injuries to person and property. *Id.* 1063. Mrs. Toteff alleges in her federal claim a condemnation of her property without due process of law. Her claim is also most analogous to a claim governed by Section 600.5805(8), and consequently, her claim is time-barred. Moreover, some courts have indicated that, in a conspiracy action, it is incorrect to apply a different limitation period to each of the overt acts alleged and that the appropriate course is to choose the statute of limitations pertaining to the substantive offense most clearly related to that which defendants were alleged to have conspired to commit. Here the alleged conspiracy was to "deprive plaintiffs of their constitutional rights by attempting to take and/or deprive plaintiffs of their property contrary to 42 U.S.C. 1982, 1983, and 1985." *See Safeguard Mutual Insurance Co. v. Miller,* 477 F.Supp. 299 (E.D.Pa.1979). ACCORDINGLY, IT IS ORDERED that Mrs. Toteff's claim of constitutional deprivations arising out of the destruction and condemnation of her property in 1977 are DISMISSED as time-barred.

■ Mr. Toteff contends that the deprivation of rights as alleged is a continuing act, or a continuous series of acts—from the alleged condemnation without notice, through the alleged conspiracy to deprive Mr. Toteff of a jury trial. The Sixth Circuit has held that a continuing deprivation of civil rights is in the nature of a continu-

ing trespass, and under Michigan law where there are continuing wrongful acts within the period limited by the statute, recovery is not barred, although it may be limited. *Marlowe, supra* at 1063; *Defnet v. City of Detroit,* 327 Mich. 254, 258, 41 N.W.2d 539 (1950). As an alternative basis for a finding that the claim of Mr. Toteff is not time-barred in its entirety, I note the Michigan Court of Appeals' decision in *Affiliated Bank of Middleton v. American Insurance Co.,* 77 Mich.App. 376, 258 N.W.2d 232 (1977), that the statute is tolled under M.C. L.A. § 600.5856, where plaintiff previously filed an action against the same defendants and where there was no decision on the merits in the previous case.[1]

Accordingly, Mr. Toteff's claims against Arnold and Ella Simmons, Greater American Construction, Barron Construction, and R.J. Criss Co. arising out of the destruction and condemnation of the Reed Building are not time-barred.

Mr. Toteff did *not,* however, sue the Village of Oxford, Larry Erickson or Brian Arrowsmith in the Oakland County action. Consequently, his claims against these parties arising out of the condemnation proceedings are time-barred. To the extent that Mr. Toteff might amend the complaint to allege a separate claim against all defendants arising out of the dismissal of the Oakland County action for a conspiracy to deprive plaintiff of a right to trial by jury, Mr. Toteff's claim would not be time-barred since that claim arose at the time of trial in January, 1981.

*Claims Under 42 U.S.C. § 1983:*

■ Turning then to the substance of Mr. Toteff's Section 1983 claim arising out of the destruction and condemnation of his property in 1977, plaintiff's allegation is, in essence, that defendants conspired together to deprive him of his property, the Reed Building, without due process of law. The United States Supreme Court articulated the prerequisites for a Section 1983 due

---

1. Dismissal for failure to join a party is not viewed as a dismissal "on the merits." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4438 (1981). *See* discussion, *infra.*

process claim in *Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1980). Plaintiff must allege that he or she possessed "property" that was subjected to some loss which amounted to a "deprivation" and that the deprivation occurred "without due process of law." It is not disputed by the parties that Mr. Toteff had a property interest in the Reed Building nor do defendants contest that the Reed Building was condemned and razed. Moreover, plaintiff has adequately alleged that defendants acted "under color of state law" by asserting a conspiracy between the City of Oxford and the other defendants in the course of a statutory condemnation proceeding. *See* M.C.L.A. § 41.411. Thus, the instant inquiry focuses on whether Mr. Toteff suffered a deprivation of property without due process of law. *Parratt v. Taylor,* 451 U.S. at 537, 101 S.Ct. at 1913. While Mrs. Toteff alleges that she received "no notice of condemnation and/or proposed destruction" of the Reed Building and that she was never "joined in any or made a party to any proceedings which said condemnation or destruction was in issue," Mr. Toteff makes no such claim. On the contrary, Mr. Toteff was joined as a party to the Oakland County proceedings by the Village of Oxford. Furthermore, an order was issued by the Village to Toteff to show cause why the Reed Building should not be made safe or ordered demolished, and Toteff participated in the show cause hearings which culminated in an order, served on Toteff, that the building was to be razed. Toteff then sued Greater American, Barron, Criss Co., and the Simmonses under state law theories of negligence and complaint to quiet title alleging that these parties were to blame for the deterioration, condemnation, and ultimate destruction of his property. In sum, Toteff was the beneficiary of predeprivation notice and hearings and was able to pursue a postdeprivation lawsuit under theories of state tort law through to

appeal. "Although the state remedies may not provide [plaintiff] with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt v. Taylor,* 451 U.S. at 544, 101 S.Ct. at 1917.

Accordingly, this Court having concluded that Mr. Toteff was not subjected to a deprivation of property "without due process of law," IT IS ORDERED that his Section 1983 claim arising out of the condemnation proceeding is DISMISSED.

■ The Supreme Court's extensive analysis of the Section 1983 due process claim in *Parratt v. Taylor* also provides an alternative basis for dismissal of Mrs. Toteff's Section 1983 claim arising out of the condemnation proceeding.[2] Mrs. Toteff's claim under Section 1983 is that she received no notice prior to the condemnation and destruction of her property.[3] The following discussion in *Parratt* suggests to this Court that in the instant situation, where the failure to give notice to Mrs. Toteff as joint tenant appears to be an oversight or intentional omission by a governmental official rather than an omission of established state or local procedure, the failure to give notice or even the opportunity for hearing "predeprivation" is not fatal for purposes of due process so long as plaintiff has an adequate postdeprivation remedy.

The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a

---

**2.** Mrs. Toteff's claim has been dismissed above as barred by the statute of limitations.

**3.** The Court will assume for purposes of this discussion that Mrs. Toteff had no actual notice

of the proceedings and that notice to Mr. Toteff, co-tenant and spouse of Mrs. Toteff, would not constitute due notice to Mrs. Toteff.

meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation. That does not mean, of course, that the State can take property without providing a meaningful postdeprivation hearing. The prior cases which have excused the prior-hearing requirement have rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities.

*Parratt,* 451 U.S. at 541, 101 S.Ct. at 1915–16.[4]

In *Parratt,* the Court found adequate postdeprivation remedies in Nebraska's state tort claims procedure, *see* Neb.Rev. Stat. § 81–8,209 *et seq.* (1976), and that such a remedy was adequate even if respondent failed to use it. *Id.* at 543, 101 S.Ct. at 1916–17. *Cf.* opinion of Justice Marshall, dissenting in part (remedy not adequate where prisoner not informed by prison officials of procedure for redress). In the instant case, while Mrs. Toteff was not accorded notice and consequently was effectively deprived of a hearing prior to condemnation, the failure to give notice appears to be the fault of a forgetful or even a malicious employee and is not due to a deficiency in state or local procedure. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1915–16. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (deprivation due to alleged deficiency in "established state procedure"). Moreover, Mrs. Toteff has recourse to a state tort action to remedy the loss of her property, *see, e.g.,* Counts III through VI of Complaint. Accordingly, IT IS ORDERED that

Mrs. Toteff's 1983 claim arising out of the condemnation proceeding is DISMISSED.

■ Plaintiffs also claim a Section 1983 violation arising out of defendants' alleged conspiracy to deprive plaintiffs of a jury trial in their Oakland County lawsuit. Notwithstanding the fact that plaintiffs have not formally pleaded this claim, the Court has considered these allegations and concludes that the proposed amendment as suggested in plaintiffs' brief would be futile. Plaintiffs contend under this theory that the parties met privately with Judge Alice Gilbert to discuss the possibility of settlement and that the judge intimated to plaintiff's counsel that defendants had an "ace in the hole" and Mr. Toteff should settle for the amount on the table; however, she would not reveal to plaintiff what the "ace" was. Plaintiff refused to settle, trial ensued, and defendants played their "ace": a motion for directed verdict against Mr. Toteff for failure to join an indispensable party, Mrs. Toteff. The motion was granted, and plaintiff's request to add Mrs. Toteff was denied. This fact situation suggests no conduct by the judge, or by the judge in conspiracy with the defendants, that was unlawful or that employed unlawful means.

Fairly analyzed, the claim comes down to an assertion that because neither the judge nor defendants' counsel disclosed to plaintiff the technical omission in his case and defendants' motion was therefore granted, the plaintiffs (Mr. and Mrs. Toteff) were deprived of a jury trial. So viewed, it is abundantly clear that neither the judge nor defendants' counsel had an obligation to make such a disclosure. Plaintiffs' claim rests upon a breach of a legal duty, which duty does not exist. Moreover, absent any objection, first, speaking to counsel sepa-

---

4. The Court has again recognized the distinction between a "tortious loss of . . . property as a result of a random and unauthorized act by a state employee" and the situation in which "it is the state system itself that destroys a complainant's property interest, by operation of law" in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

In *Logan,* plaintiff challenged "not the Commission's error, but the 'established state procedure,'" and hence, the Court found that the postdeprivation remedy was insufficient and that *Parratt* was inapplicable. *Id.* at 436, 102 S.Ct. at 1158. *See also The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 96 (1982).

rately in chambers for purposes of prompting a settlement between the parties does not evidence a conspiracy or misconduct on the part of a judge.

The denial of a motion to add a completely new party on the day of trial in the face of a motion for directed verdict is not unusual, and moreover, it would seem appropriate under the circumstances where plaintiff had delayed, where such delay might prejudice the defendants, and where no excusable neglect had been shown. *See generally* 6 C. Wright & A. Miller, § 1488 (1971). Finally, even if we presume, as plaintiffs suggest, that the sole reason for the denial of the proposed amendment was plaintiff's refusal to settle the case, I am not persuaded that an otherwise proper decision rendered by a judge can constitute a constitutional deprivation by virtue of a spiteful motive. A proposed amendment alleging a conspiracy with Judge Gilbert on these facts would likewise be futile under the same analysis.

*Claims Under 42 U.S.C. § 1985(2):*

Plaintiffs also raise a claim under 42 U.S.C. § 1985(2) that "Defendants were engaged in a conspiracy to deprive Plaintiffs of their constitutional rights by attempting to take or deprive Plaintiffs of their property."

■ First, with respect to Mrs. Toteff's claim under Section 1985(2) that her property was condemned and destroyed in 1977 without notice or an opportunity for hearing, plaintiff having failed to bring a lawsuit within three years of the date of injury, her claim is time-barred under the applicable statute of limitations. M.C.L.A. § 600.5805(8). *See discussion supra.*

■ Secondly, plaintiffs pleading a conspiracy under 42 U.S.C. § 1985(2) must comply with the general requirement in Rule 8 that the complaint contain a direct, simple, and concise statement that demonstrates the pleader is entitled to relief. In addition, a growing number of courts have required that complaints alleging conspiracy include more detail than usually is demanded of other pleadings. 5 C. Wright & A. Miller, § 1233, p. 179 (1969). Plaintiffs pursuing a theory of conspiracy under the civil rights acts are "bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It [is] incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Nation v. United States Government,* 512 F.Supp. 121, 125 (S.D.Ohio 1981) (quoting *Peck v. United States,* 470 F.Supp. 1003, 1008 (S.D. N.Y.1979) and citing *Powell v. Workmen's Compensation Board,* 327 F.2d 131, 137 (2d Cir.1964)). In the present case, Count II of the complaint alleging a conspiracy under Section 1985 is not sufficiently specific with respect to the conduct of any of the defendants herein. Moreover, the only overt acts alleged in this count are the condemnation and destruction of the building and the failure to notify Mrs. Toteff of condemnation proceedings, conduct which is not actionable by either of these plaintiffs for the reasons set forth above.

■ Assuming, however, that plaintiffs' request to amend were granted so that they could satisfy the pleading requirements under Rule 8, their claims of conspiracy are substantively defective in that, even assuming all allegations of conspiracy contained in the complaint and in the subsequent briefing are true, plaintiffs have failed to state a claim under Section 1985(2).[5]

In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court carefully delineated the cause of action cognizable under Section 1985(3). In construing this section, the Court held for the first time that Section 1985(3) reached conspiracies by private parties to deny others the equal protections of the laws; however, the Court limited the sec-

**5.** Although plaintiffs complaint makes reference to 42 U.S.C. § 1985 generally, counsel has clarified at oral argument that the claim of conspiracy is being pursued under subsection (2) of that provision.

tion's application to claims alleging "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798. While *Griffin* involved only a claim under Section 1985(3), several courts have extended its reasoning to deny claims under Section 1985(2) absent some showing of racial or "other class-based animus." *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340 (5th Cir.) *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981); *Jones v. United States,* 536 F.2d 269 (8th Cir.1976); *cf. McCord v. Bailey,* 636 F.2d 606 (D.C.Cir. 1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981); *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976). The district court in *Kimble* divided Section 1985(2) into four clauses:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.

(Ellipsis in original.) 445 F.Supp. 269, 274 (E.D.La.1978).

Upon review of the Supreme Court's decision in *Griffin* and of the Ku Klux Klan Act from which Sections (2) and (3) of 1985 were derived, the Fifth Circuit concluded in *Kimble* that allegations of racial or other class-based animus were required under all four clauses of Section 1985(2) notwithstanding the fact that clauses A and B do not contain references to "the equal protection of the law."[6] The Court in *Kimble* found, alternatively, that plaintiffs had failed to allege that they were "injured" because they "attended or testified in federal court" as is required under clause B of Section 1985(2). In so holding, the Court noted that

[p]assage of the Ku Klux Klan Act was "motivated by a desire to prevent and punish acts of terror or intimidation that threatened the attempt to create a political environment hospitable to equality." In light of the acts of violence that threatened the sanctity of federal courts, Congress meant Section 1985(2) to protect a party based on his physical presence while attending or testifying in court.

*Id.* 348 (citation omitted).

▮ Notwithstanding the divergence of opinion among the circuits, this Court can confidently conclude that in order to state a claim under 42 U.S.C. § 1985(2) one must allege either a racial or other class-based animus *or* that defendants used force, intimidation, or threats to deter a party or witness from attending or testifying at a proceeding or that defendants in fact injured a party or witness because of such attendance or testimony.

In the instant matter, plaintiffs do not assert a racial or class-based animus on the part of defendants. Their claim is, first, that plaintiffs were injured because Mrs. Toteff did not receive notice of condemna-

---

**6.** Other circuits have rejected this analysis noting:

The first half [clauses A and B] of § 1985(2) aims at conspiracies the object of which is intimidation of or retaliation against parties or witnesses . . . in any court of the United States. The federal nexus, then, is not the class-based invidiously discriminatory animus required by the second half [claus-

es C and D] of the subsection, but the connection of the proscribed activities to a federal court.

*Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976). *See also* dissenting opinion of Justice White to the denial of certiorari in *Kimble v. D.J. McDuffy,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).

tion proceedings. Only Mrs. Toteff was deterred from attending the proceedings, and the cause of her failure to attend was not "force, intimidation, or threat." She did not attend because she did not receive notice. Secondly, plaintiffs allege that they were pressured by Judge Gilbert into settling their case with defendants and that Judge Gilbert subsequently dismissed their case because they refused to settle. As to these contentions, I am convinced that the influence that the state court judge is alleged to have exerted upon counsel in chambers in order to settle a case on the eve of trial is not what Congress intended by the terms "force, intimidation or threat" in the original passage of the Ku Klux Klan Act and its progeny, Section 1985(2). Likewise, the dismissal of a lawsuit by a court for failure to join an indispensable party cannot be the "injury" contemplated by the draftsmen of Section 1985. *See, e.g., Kimble,* 648 F.2d at 348 (discharge of employee by employer for the alleged reason that employee had filed and won a previous lawsuit against former employer did not constitute "injury" cognizable under 42 U.S.C. § 1985(2). Moreover, the appropriate remedy for such an injury is appeal, not a suit against persons who allegedly conspired with the judge.

As an alternative basis for dismissal of plaintiffs' claim under Section 1985(2), I note that the only reference to the obstruction of the "due course of justice" in a state court is contained in clause C. That clause also includes the reference "equal protection of the laws" which suggests that any claim of obstruction of justice arising out of a state court proceeding must also include a claim of racial or other class-based animus, which is absent from the instant complaint. Indeed, many courts have held that *Griffin*'s racial or class-based animus requirement is fully applicable to claims brought under clauses C and D of Section 1985(2). *Kimble,* 648 F.2d at 346, *citing Slavin v. Curry,* 574 F.2d 1256, 1262, *modified,* 583 F.2d 779 (5th Cir.1978). *See also, Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Accordingly, IT IS ORDERED that plaintiffs' claims under Section 1985(2) are hereby DISMISSED.

### Claim Under 42 U.S.C. § 1982:

■ Likewise, plaintiffs having failed to allege a deprivation under 42 U.S.C. § 1982 on the basis of their race, IT IS HEREBY ORDERED that this claim is also DISMISSED. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968).

### Res Judicata:

■ This Court has considered the potential res judicata effect of the directed verdict and judgment entered against plaintiff in the Oakland County case, and I conclude that this doctrine is inappropriate as applied to the instant facts. Plaintiff Tommy Toteff in the state action alleged counts of trespass and negligence, along with a claim of a constitutional deprivation of due process in the taking of its property. The motion and order of directed verdict was not directed to the merits of plaintiffs' claims but rather were based on a procedural defect—that plaintiff had failed to join his wife, a necessary party to the action. The court's ruling did not address the substance of plaintiffs' claims, and these issues were never really litigated. *Cf. Simon v. M/V Haileah,* 431 F.2d 867 (5th Cir.1970); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, §§ 4445, 4438 (1981). As is noted by Professors Wright and Miller,

> Rulings made on questions of party joinder present few difficult preclusion problems. Civil Rule 41(b) provides that dismissal for failure to join a party under Civil Rule 19 does not operate as an adjudication upon the merits. This provision reflects the long-settled rule that the dismissal does not bar a new action that corrects the deficiency of parties.

*Id.* § 4438; *see Hughes v. United States,* 71 U.S. (4 Wall.) 232, 18 L.Ed. 303 (1866). This

rule is based on the rationale that, for a judgment to attain res judicata effect, it must be "on the merits." Wright, Miller & Cooper, *supra* § 4427. Further, there would be no res judicata as to Marilynn Toteff in any event, because neither her status as spouse or joint property owner make her a party "in privity" against whom the judgment is enforceable. *See* 1B Moore ¶ 0.411.

It is not disputed that Plaintiff Tommy Toteff entered into a stipulated dismissal with Defendant Criss Company prior to the trial date in the Oakland County case in which the parties agreed "that the cause shall and may be discontinued with prejudice and without costs as to claims asserted by Tommy P. Toteff against R.J. Criss, and claims asserted by R.J. Criss Co."

That instrument purports to end the litigation between Mr. Toteff and the Criss Co., at least as to any claimed injury up and until March 11, 1982, the date of the stipulation. That stipulation is binding on the parties for any controversies arising up and until March 11, 1982. Moreover, to the extent that plaintiffs now sue the Criss Co. for the alleged conspiracy involving Judge Gilbert, it is without merit in that Defendant Criss was no longer a party to the litigation at that point.

As to the res judicata effect of written stipulations, I note once again the authorities Professors Wright, Miller, and Cooper. "Judgments that rest on stipulations . . . should be given effect according to the intention of the parties . . . ." *Id.* at §§ 4427, 4443. The stipulation between Criss Co. and Mr. Toteff unambiguously terminates all claims between these parties. Their intentions are clear from the face of the document, and accordingly, I conclude that the stipulation and judgment between these parties has res judicata effect.

This Court having concluded that plaintiffs have failed to state a federal claim under 42 U.S.C. §§ 1982, 1983, and 1985(2), IT IS ORDERED that plaintiffs' claims of state law negligence, trespass, conversion, and breach of contract, although not insubstantial in the jurisdictional sense, shall be DISMISSED pursuant to the authority of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, IT IS ORDERED that defendants' motions for judgment on the pleadings are hereby GRANTED.